UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| A.D., by his guardian and next friend, MARY B. VALENCIA, et al., ) ) ) Plaintiffs, ) ) v. ) ) CITY OF SPRINGFIELD, ILLINOIS, ) ) Defendant. ) | No. 16-CV-3331 JURY TRIAL DEMANDED |

### PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW Plaintiffs, by and through their attorneys, and state the following in reply to Defendant's response to Plaintiffs' motion for preliminary injunction:

Defendant's response relies significantly on statements made nearly 27 years ago by Daniel Lauber, Plaintiff's expert witness. Mr. Lauber is a fair housing expert, who was hired as a consultant to the Illinois Planning Council on Developmental Disabilities to review plans submitted by home-rule municipalities and to make a determination whether the plans complied with the Fair Housing Amendments Act of 1988 ("FHAA"). At that time, Mr. Lauber reviewed Defendant's proposed amendments to its Zoning Code ("Code") and concluded that Defendant's plan would bring it into compliance with the FHAA, but included as a cautionary note: "as we understand the act and case law interpreting it." (Doc. 15, p 4). Defendant now seeks to ignore that caveat and almost three decades of case law interpreting the FHAA, and to shirk its responsibility to amend its ordinances, when necessary, to comply with the law.

More importantly, Mr. Lauber never suggested that Defendant's spacing rule should apply to small group residences. In fact, the very report Defendant cites to in support of its position that spacing rules are permissible under the FHAA, which was prepared by Mr. Lauber

1

in 1991 for the Illinois General Assembly, states unequivocally that "[r]equiring a special use permit for the smaller community residences of, say, four to eight residents plus staff to locate in a single-family zoning district, even the least dense district, is **almost certainly illegal under the Fair Housing Act**." (Doc. 15, Ex. 2, p. 19). For these reasons and the following arguments, the Court should grant Plaintiffs' motion for preliminary injunction (Doc. 8).

## I. DEFENDANT'S INTERPRETATION OF THE DEFINITION OF "FAMILY" UNDER ITS ZONING CODE IS PREPOSTEROUS AND SHOULD BE REJECTED

Under Section 155.001 of the City's Zoning Code ("the Code"), a "family" is defined as:

> One or more persons each related to one another by blood, marriage, or adoption, or is a group of not more than five persons not all so related occupying a single dwelling unit which is not a boardinghouse or lodging house as defined in this section.

Defendant contends that the phrase "a group of not more than five persons not all so related" means that five persons may live together in a single dwelling unit, but *only if* some of the people are related by blood, marriage, or adoption. (Doc. 15, p. 6). Defendant's interpretation of this definition defies the plain and ordinary meaning of the language used and contradicts its own prior interpretation.

The Code's definition provides that a group of five persons "not all so related" shall be considered a "family." "If the language of a statute is clear and unambiguous, 'in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009) (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). The wording "not all so related" is clear and unambiguous: the individuals do not need to be related. Some of the individuals may be related, but it is not a requirement. A sampling of zoning ordinances reveals that the language "not all so related" is often used when defining an alternative to the category of individuals who are related

2

by blood, marriage, or adoption. Had Defendant intended that at least some of the five people be related, it should have said so (i.e., "while not all five individuals must be related, at least X number of individuals must be related by blood, marriage, or adoption.") The plain and ordinary meaning of the language in this case cannot be reasonably disputed.

In addition, Defendant's present interpretation of the definition of "family" directly contradicts its previous position on the issue. In a letter to an attorney for another group home dated October 27, 1995, Kevin Hubbart, Assistant Corporation Counsel for the City of Springfield, stated that "it is the opinion of both my office and the zoning administrator that if there are five (5) or fewer residents then the Oxford House resident [sic] should be considered a family and no zoning violation would exist." (Doc. 8, Ex. C, p. 24). Hubbart did not indicate that some of those five residents would need to be related by blood, marriage, or adoption. Plain and simple, Hubbart stated that five or fewer individuals would be considered a family under the Code. Mr. Lauber presented this letter to the Planning and Zoning Commission meeting on November 16, 2016 in support of his contention that the residents of the Noble Home constitute a family under the Code's definition of family. *Id.* at 12-13. Since 1995, the definition of family under the Code has not been amended. A change in the interpretation of the definition is not warranted and should not be allowed.

Defendant's claim that its definition of family excludes groups of unrelated individuals is a desperate attempt to cover up its discriminatory conduct. Plaintiffs are confident that the evidence will show that Defendant has allowed groups of two to five unrelated individuals to live in single-family dwellings and that Defendant has not sought to evict such groups because they were not related. Defendant's selective enforcement of its ordinance in this case is yet another example of how Defendant has discriminated against Plaintiffs in violation of the FHAA. The

3

Court should reject Defendant's suggested interpretation, interpret the Code in accordance with the plain and ordinary meaning of the language used, and find that the residents of the Noble Home meet the definition of a "family" under the Code.

## II. THE 600-FOOT SPACING RULE FACIALLY DISCRIMINATES AGAINST PEOPLE WITH DISABILITIES AND SHOULD BE INVALIDATED

Regardless of how the definition of "family" is interpreted, the 600-foot spacing rule is still facially discriminatory against people with disabilities and should be invalidated. Only residences for people with disabilities are subject to a spacing requirement under the Code. *See* Section 155.211.1. The application of different rules for different classes of people (in this case disabled individuals versus non-disabled individuals) is by definition discrimination. Whether the government's conduct is justified is a separate question. Defendant suggests that the determination of whether a statute is discriminatory both precedes and decides the level of scrutiny that should be applied by a court. According to Defendant, when no discrimination is found, rational basis review applies; conversely, Defendant asserts that when a court determines that a statute or ordinance is discriminatory, it will apply heightened scrutiny. Defendant clearly misunderstands the law.

When considering the appropriate level of scrutiny to be applied to facially discriminatory statutes and ordinances in fair housing cases, courts have looked to whether or not the targeted individuals are considered a protected class. The Sixth, Ninth, and Tenth Circuits have applied heightened scrutiny to claims of discrimination against the disabled under the FHAA. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007); *Larkin v. Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 290; *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503 (10th Cir. 1995). "[T]he FHAA specifically makes the handicapped a protected class for purposes of a statutory claim -- they are the direct object of the statutory protection -- even if

4

they are not a protected class for constitutional purposes." *Bangerter*, 46 at 1503. The Eighth Circuit is the only circuit that has applied rational basis review to statutes that facially discriminate against the disabled. *See Familystyle of St. Paul, Inc. v. St. Paul*, 923 F.2d 91, 94 (8th Cir. 1991). In *Familystyle*, the Eighth Circuit reasoned that because the disabled are not considered a suspect class under the Constitution, they should not be treated as such under the FHAA. *Id.* However, the "overwhelming majority of courts" have rejected this reasoning and adopted heightened scrutiny in cases evaluating statutes or ordinances that facially discriminate against the disabled. *See Human Res. Research & Mgmt. Grp. v. Cty. of Suffolk*, 687 F. Supp. 2d 237, 256 (E.D.N.Y. 2010) ("Indeed, it would defy logic to apply stricter scrutiny to a municipality's justification for a generally applicable law with an allegedly discriminatory impact than to a justification for a law that facially discriminates by targeting an FHA-protected class.") This Court should follow the majority of Circuits that have considered this issue and adopt a heightened level of scrutiny and find that Defendant's facially discriminatory Spacing Rule is invalid under the FHAA.

### III. EVEN IF THE COURT ADOPTS DEFENDANT'S INTERPREATION OF THE TERM "FAMILY," THE ZONING ORDINANCE DISPARATELY IMPACTS PEOPLE WITH DISABILITIES IN VIOLATION OF THE FHAA

Alternatively, if the Court adopts Defendant's definition of "family," which would bar small groups of unrelated individuals from living together in single-family residences, the Court should find that Defendant's actions violate the federal anti-discrimination statutes because the zoning ordinance's exclusion of small groups of unrelated individuals in single-family dwellings has an adverse disparate impact on individuals with disabilities.

In 2013, the United States Department of Housing and Urban Development ("HUD") adopted the Discriminatory Effects Rule ("Rule"), formalizing "HUD's long-held interpretation

of the availability of 'discriminatory effects' liability under the [FHA], and [providing] nationwide consistency in the application of that form of liability." 78 FR 11460, Executive Summary; 24 CFR 100.500. The Rule defines "discriminatory effect" as a practice that "actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of [a] . . . handicap," 24 CFR 100.500(a), and seeks to establish a three-part burden-shifting test. Under the Rule, once a plaintiff proves that a challenged practice caused or predictably will cause a discriminatory effect, the burden shifts to the defendant to prove that the challenged practice is "necessary to achieve one or more substantial, legitimate, nondiscriminatory interests" of the defendant. *Id.* Even if the defendant satisfies its burden, the plaintiff may still prevail upon proving that the defendant's interests "supporting the challenged practice could be served by another practice that has a less discriminatory effect." *Id.* The Rule further states that a showing of discriminatory intent is not necessary to establish that a challenged practice has a discriminatory effect. *Id.* The Seventh Circuit has not yet considered the burden-shifting approach adopted by HUD, but two other Circuits that have had the opportunity have adopted this approach. *See 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 510 (9th Cir. 2016); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014).

Historically, the Seventh Circuit has utilized a four-factor analysis to determine when conduct produces a discriminatory impact in violation of 42 U.S.C. § 3604. *See Metropolitan Housing Dev. Corp. v. Village of Arlington Heights*, 558 F. 2d 1283, 1290 (7th Cir. 1977). The four factors are: 1) the discriminatory effect of the challenged conduct; 2) the existence of "some evidence" that the defendant acted with discriminatory intent; 3) "the defendant's interest in taking the action complained of"; and 4) whether the plaintiff seeks to "compel the defendant to

6

affirmatively provide housing" for members of a protected group or "merely to restrain the defendant from interfering with individual property owners who wish to provide such housing." *Arlington Heights*, 558 F. 2d at 1290-93. Under either approach, Plaintiffs will prevail.

First, the City's zoning ordinance's exclusion of small groups of unrelated individuals from single-family residences has a greater adverse impact on disabled persons than on non-disabled persons. Although some single, non-disabled adults may prefer group living arrangements for financial reasons, for disabled adults, like A.D., who cannot live independently, a group living arrangement is the *only* residential housing option they have because their disability makes it *impossible* for them to live independently. As such, disabled adults like A.D., are more likely than nondisabled adults to live with unrelated individuals. As court after court has acknowledged, group living arrangements are, therefore, absolutely "essential" for many disabled adults. *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775, 787 (7th Cir. 2002) ("Group living arrangements can be essential for disabled persons . . . and not similarly essential for the nondisabled."); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003) (noting that the argument that "developmentally disabled adults gain a specific benefit from group living" is "uncontested and well established in our case law."). Although small groups of disabled individuals may live together in a "family care residence," these residences are subject to the Spacing Rule, which severely limits the availability of such residences and creates additional burdens that groups of non-disabled, unrelated individuals who seek to live together do not face.

Second, as discussed in Plaintiffs' Memorandum in Support of Its Motion for Preliminary Injunction, there is more than "some evidence" that Defendant acted with discriminatory intent.

Third, Defendant cannot possibly have a reasonable and legitimate interest in excluding

7

three unrelated disabled adults from single-family dwellings. Any number of related individuals may live in a single-family dwelling. As such, Defendant's action cannot be justified based on concerns about density or overcrowding. According to Defendant's suggested interpretation of the definition of "family," two related individuals and three unrelated individuals could all live in a single-family residence. The idea that the two related individuals would somehow convert the entire residence into a more family-like dwelling is absurd.

Finally, the nature of the relief sought by Plaintiffs is simple and requires absolutely no action on the part of Defendant. Plaintiffs are not asking Defendant to build or subsidize housing for persons with disabilities nor are they requesting any special services that would require any expenditure of public funds. Plaintiffs are simply asking that the three residents of this house – who seek to live together as a family household on a permanent basis – be afforded the right to live together in the neighborhood of their choice the same as any other family.

For the foregoing reasons, Defendant's zoning ordinance "actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of [a] . . . handicap." 24 CFR 100.500(a). As such, Plaintiffs are also likely to succeed on the merits of their disparate impact claim.

Law Offices of Thomas E. Kennedy, III, L.C.

/s/Thomas E. Kennedy, III

Thomas E. Kennedy, III
906 Olive St., Ste. 200
St. Louis, MO 63101
(314) 872-9041
(314) 872-9043 fax
tkennedy@tkennedylaw.com

Attorney for Plaintiffs IAG and A.D.

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I electronically filed Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Preliminary Injunction with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

                                                Law Offices of Thomas E. Kennedy, III, L.C.

                                                By: */s/Thomas E. Kennedy, III*
                                                   Thomas E. Kennedy, III
                                                   906 Olive St., Ste. 200
                                                   St. Louis, MO 63101
                                                   314 872-9041
                                                   314 872-9043 (FAX)
                                                   tkennedy@tkennedylaw.com