E-FILED
Wednesday, 02 August, 2017 03:42:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| A.D., by his guardian and next friend, MARY B. VALENCIA, and INDIVIDUAL ADVOCACY GROUP, INC., an Illinois not-for-profit corporation, <br><br>    Plaintiffs, <br><br>v. <br><br>CITY OF SPRINGFIELD, <br><br>    Defendant. | Case No. 16-3331 |

## OPINION

RICHARD MILLS, United States District Judge:

Plaintiffs' Motion for Preliminary Injunction is pending.

The Court heard oral argument on the motion on July 13, 2017, and is now ready to rule.

But first, the background.

## I. INTRODUCTION

On December 22, 2016, the Plaintiffs filed a three-count complaint alleging the Defendant City of Springfield ("the City") had discriminated against the Plaintiffs on the basis of their disabilities in violation of the federal Fair Housing Amendment Act of 1988 ("FHA"), 42 U.S.C. §§ 3601-3631; the Americans with Disabilities Act

("ADA"), 42 U.S.C. § 12131, *et seq*. and Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. § 794(a).

On January 11, 2017, the Plaintiffs filed a motion for a preliminary injunction seeking an order enjoining the City from enforcing an alleged discriminatory ordinance and evicting the residents of 2328 Noble Ave. in Springfield ("the Noble home") while this litigation is pending. This action was brought after Christine and Robyn Hovey, the owners of the Noble home, were denied a conditional permitted use ("CPU") to allow the owners and the Plaintiffs to operate a family care residence. The City claimed that a family care residence at the Noble home would have violated spacing requirements of the Springfield Zoning Code Section 155.03.

The complaint states that Plaintiff A.D. is a 62-year old adult who is developmentally disabled and handicapped and has been determined to be incompetent. He ambulates in a wheelchair and is almost totally nonverbal. A.D. brings this action by next friend and legal guardian Mary B. Valencia, his sister, and they both reside in Sangamon County, Illinois. The other Plaintiff, Individual Advocacy Group, Inc., ("IAG"), is a not-for-profit Illinois corporation with its principal place of business in Romeoville, Illinois. IAG provides in-home support for individuals with disabilities. In March 2014, IAG arranged for housing for A.D. and two of its other clients, J.M. and J.D., after the property owners renovated the

home to make it fully accessible to the mobility-impaired residents.

Defendant City of Springfield is a city within the Central District of Illinois that is organized under the laws of Illinois and is a body politic and corporate, in addition to being a public entity within the meaning of the ADA.

The Noble home is a one-story ranch house that resembles other residences in the neighborhood. From the exterior, there is nothing that would indicate individuals with disabilities reside in the home. There are no signs outside the house and the staff who work there do not drive vehicles that would identify the home as a place where people with disabilities live. There are generally no more than one or two staff cars at the premises, except during a shift change when there may be three. There have not been any police, fire or emergency calls at the home since March 2014.

The Plaintiffs allege the denial of the CPU constitutes a violation of the aforementioned federal statutes. The Plaintiffs seek a preliminary injunction to prevent the City from taking any enforcement action against the residents during the pendency of the lawsuit.[1]

The City has not begun enforcement or taken any other action to remove the Plaintiffs or other residents of the Noble home. The City contends that its zoning

---

[1] Ultimately, the Plaintiffs seek an Order directing the City to grant the requested CPU and permanently refrain from treating the Noble home as a non-conforming use under the zoning code, as well as money damages and fees.

ordinance with respect to group homes does not violate any federal statutes either on its face or intent.

## II. BACKGROUND

A. Zoning Code

Under Section 155.001 of the City's Zoning Code ("the Code"), a "family" is defined as: "One or more persons each related to one another by blood, marriage, or adoption, or is a group of not more than five persons not all so related occupying a single dwelling unit which is not a boardinghouse or lodging house as defined in this section."[2] Section 155.001 defines a "family care residence" as:

> A single dwelling unit occupied on a relatively permanent basis in a family-like environment by a group of no more than six unrelated persons with disabilities, plus paid professional support staff provided by a sponsoring agency, either living with the residents on a 24-hour basis or present whenever residents with disabilities are present at the dwelling.

---

[2]The parties dispute how the phrase "not all so related" should be interpreted. The City claims that "not all so related" merely means that not all of the occupants of the dwelling need to be related, as long as some of them are. In other words, a traditional group of related persons would not lose family status by taking in an unrelated boarder or two, as long as the total number of residents does not exceed five. The Court agrees with the Plaintiffs that the plain and ordinary meaning of the phrase "not all so related" refers back to "related to one another by blood, marriage, or adoption" language and means that a group of five persons do not need to be related to be considered a family under the Code. Some of the residents may be related but it is not a requirement. If the City intended the language to mean that a family of related persons could take in an unrelated boarder or two, the Court presumes it would have specified that "at least three (or four) of the individuals must be related by blood, marriage, or adoption."

A residence that is deemed a "family care residence" is subject to additional restrictions under the Code. Section 155.053 applies only to family care and group community residences and states:

> In order to ensure that community residences, which operate more effectively in residential environments, do not adversely affect those environments through over concentration or improper operation, no facility shall be operated in a residence district unless: a) It is located upon a zoning lot which is more than 600 feet from the property line of any other such facility.

Section 155.211.1 of the Code provides that any family care or group community residence that is not in compliance with the 600-foot spacing requirement "may be eligible" for a CPU after establishing the following:

> (a) Petitioners shall demonstrate that the proposed location and use will not have any adverse impact upon residents of nearby facilities when located within 600 feet of another such facility; and
> (b) The proposed location will not have any detrimental affect [sic] upon existing privacy, light or environment of surrounding residences.

B. Zoning Dispute

A complaint was filed because the Noble home is located within 600 feet of an existing group home. A group home operated by Sparc is about 160 feet from the Noble home. On October 7, 2016, the Hoveys and IAG submitted a joint application for a CPU, which included a request for a reasonable accommodation to the City's rules, policies and practices if the CPU was not granted. The following month, the

Springfield-Sangamon County Regional Planning Commission recommended denial of the CPU application because the petition and exhibits in support of the application did not provide "sufficient detail to allow staff to make reasonable determination whether the design and method of operation of the proposed use will minimize the adverse effects on the character of the surrounding area."

On November 16, 2016, the Zoning and Planning Commission ("the Commission") held a public hearing on the CPU application. At the hearing, Dr. Charlene Bennett, Executive Director of IAG, testified that when the Noble home opened, IAG was not aware of the Sparc group home across the street. Dr. Bennett further testified that the residents of the Noble home had no contact with the residents of the Sparc home except in early 2014 when a Sparc resident had wandered unsupervised down the street and entered the Noble home. Daniel Lauber, a land use planning and zoning expert, testified that the Noble home should be treated as a "family" under the Code and should not be required to seek zoning approval because it operates in all respects like a functional single-family home and less than five people reside in the home. He also testified that the Noble home met all the criteria for a CPU because it is consistent with the City's comprehensive plans and has not adversely affected the surrounding community. Lauber further testified that there was no reason not to grant a reasonable accommodation for the Noble home given that it

6

furthered the City's goal for stable, single-family residential neighborhoods and did not cost the City anything.

Three neighbors and a realtor spoke in opposition to IAG's CPU application. The complaints of these witnesses were mostly unrelated to the operation of the Noble home. At the conclusion of the hearing, the Commission voted 4-3 to uphold the recommendation of the Commission to deny the CPU. The Commission stated that "the evidence adduced at the hearing did not support the proposition that the adoption of the proposed request is in the public interest."

At the December 20, 2016 City Council meeting, pursuant to Section 155.227 of the City's Zoning Code, the Springfield City Council considered the Commission's recommendation on IAG's CPU application. Following a period of public comment, the Council voted 8-2 to uphold the decision of the Commission and deny the application for the CPU. During the hearing Alderman Theilen stated, "You guys have been there for three years with no issues. But it still doesn't change the fact that the business didn't follow the correct pattern in order to be able to put a group home there." Alderman Hanauer agreed and stated he would vote to deny the CPU because IAG had not complied with the spacing requirement in the Code. Alderwoman Turner noted that the Code envisioned some properties might not be compliance with the spacing requirement, which is why the CPU process existed. She asked whether

7

the property had any adverse impact on the neighborhood and, in response, Police Chief Winslow testified that the address did not stand out to him as a problem property. Mayor Langfelder expressed concern about the precedent that would be set by making an exception to the spacing rule and granting the CPU. It was stated at the hearing that, since the rule went into effect in 1990, no exception to the spacing rule had ever been granted.

Because IAG and Mary Valencia do not have alternative housing for A.D. or the other Noble home residents, they seek injunctive relief to avoid eviction while the case is pending. Absent such relief, the Plaintiffs allege they will suffer immediate and irreparable harm.

The City claims that the zoning ordinance does not violate the FHA, either on its face or in its intent. The Plaintiffs' expert, Daniel Lauber, vouched for the ordinance's validity at the time the ordinance was amended in 1990.

The City further alleges that IAG has offered no evidence of how the Noble home's encroachment on the Sparc home's spacing would affect the Sparc residents, who also are entitled to the benefits of the FHA.

III. DISCUSSION

A. Legal standard

A party seeking a preliminary injunction must demonstrate a likelihood of

success on the merits, it will likely suffer irreparable harm in the absence of preliminary relief, the equities tip in its favor and an injunction is in the public interest. *See Higher Society of Indiana v. Tippecanoe County, Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017). The City states that the only element it contests is whether the Plaintiffs can establish a likelihood of success on the merits.

### B. Fair Housing Act

The FHA provides that it shall be unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of a person who intends to reside in the dwelling. 42 U.S.C. § 3604(f)(1). It also makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap" of any person who intends to reside in the dwelling after it is made available. 42 U.S.C. § 3604(f)(2). Courts have found that the FHA and other federal disability statutes apply to municipal zoning ordinances that would restrict the placement of group homes. *See Wisconsin Community Services, Inc. v. City of Milwaukee*, 465 F.3d 737, 749-50 (7th Cir. 2009).

Discriminatory action under the FHA may be shown in three ways: (1) by proof of discriminatory intent; (2) by evidence showing that a defendant's actions had a

9

disparate impact on the select group; or (3) by showing that a defendant failed to make a reasonable accommodation. *See Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009); *Good Shepherd Manor Fdn., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003). The Plaintiffs allege discrimination based on disparate treatment and reasonable accommodation theories.

The City asserts the 1990 amendment to the zoning ordinance was not adopted with a discriminatory motive, as Mr. Lauber's testimony stated at the time of enactment.

(1) Intentional Discrimination

On November 10, 2016, the Department of Housing and Urban Development and the Department of Justice issued a joint statement[3] entitled "State and Local Land Use Laws and Practices and the Application of the Fair Housing Act," which includes the following passage:

> In a community where a certain number of unrelated persons are permitted by local ordinance to reside together in a home, it would violate the Act for the local ordinance to impose a spacing requirement on group homes that do not exceed that permitted number of residents because the spacing requirement would be a condition imposed on persons with disabilities that is not imposed on persons without disabilities.

---

[3]The joint statement is attached to the Plaintiffs' motion for a preliminary injunction.

10

The Plaintiffs allege the spacing rule, on its face, applies only to residences for the disabled and imposes a condition on those residences that is not imposed on similar residences for persons without disabilities. Based on the only reasonable interpretation of "family" as used in the zoning ordinance, the Plaintiffs' assertion that the Code imposes different rules for different classes of people is persuasive. While no home for persons with disabilities may be located in a residential district if it is within 600 feet of another such home, there is no similar spacing rule for homes in which five unrelated persons without disabilities reside.

Based on the unambiguous language of the Code, five unrelated college students can live together in a residential area, park several cars on the street and have multiple friends over day and night while not being subject to any conditions. If this is the case, then the City would be treating the residents of the Noble home differently simply because they are disabled.

The Plaintiffs cite *United States v. City of Chicago Heights*, 161 F. Supp.2d 819 (N.D. Ill. 2001), wherein the court considered whether a 1,000 foot spacing requirement violated the FHA. *See id*. at 837. "Statutes that single out for regulation group homes for the handicapped are facially discriminatory." *Id*. at 843 (citing *Larkin v. Mich. Dept. of Social Servs.*, 89 F.3d 285, 290 (6th Cir. 1996)). The FHA is violated when "different standards apply to group homes than to families and other

11

groups living together." *Id*. The court explained:

> [G]roups of five or less unrelated persons with disabilities are subject to conditions to which similarly situated groups of five or less unrelated persons without disabilities are not. The City offers no justification for treating two groups, identical in size and familial status, differently on the basis of disability. As such, the City cannot treat the residence at 662 West 14th Place as a "family community residence," subject to location restrictions, rather than as a "family," not subject to those restrictions, without violating the FHAA.

*Id*. at 833.

The Plaintiffs allege the record here shows that the spacing rule was not adopted out of concern for the disabled. The City's focus was whether homes for the disabled adversely affected residential environments "through over concentration or improper operation."

Although the Seventh Circuit has not addressed the level of scrutiny to apply to alleged discriminatory statutes, the Court agrees with the Northern District of Illinois in *Chicago Heights*, wherein Judge Holderman determined that the appropriate standard for evaluating such ordinances is that the provisions "cannot survive unless they are warranted by the specific needs and abilities of those handicapped persons to whom they apply." *Id*. at 843 (citing *Larkin*, 89 F.3d at 290; *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1503-04 (10th Cir. 1995)).

Because it does not appear that the interests of the disabled were considerations when assessing the validity of the zoning ordinance and given that the ordinance places restrictions on where the disabled residents of the Noble home may live, the Court finds that the Plaintiffs have established a likelihood of success on the merits of showing the spacing rule is invalid under the FHA.

(2) Reasonable Accommodation

The Court also finds that Plaintiffs are likely to succeed in showing that the City's refusal to grant the Plaintiffs' CPU application violated the FHA's reasonable accommodation provision. The statute requires "a public entity to reasonably accommodate a disabled person by making changes in rules, policies, practices or services as is necessary to provide that person with access to housing that is equal to that of those who are not disabled." *Good Shepherd*, 323 F.3d at 561. An accommodation is required under the FHA if it "(1) is reasonable, and (2) necessary, ( 3) to afford a handicapped person the equal opportunity to use and enjoy a dwelling." *See Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 783 (7th Cir. 2002). "When a zoning authority refuses to reasonably accommodate these small group living facilities, it denies disabled persons an equal opportunity to live in the community of their choice." *Id*. at 784.

The City alleges the Plaintiffs are seeking an opportunity which would not be afforded similarly situated non-disabled persons under any circumstance. There is no provision under the City's zoning code for three unrelated non-disabled adults to live in a single family home. While that may be accurate, the Court has doubts as to whether the City has ever taken any measure to enforce that prohibition against three unrelated non-disabled adults residing in a single family home. Common sense suggests that such a living arrangement would not be unusual for college students or young adults who might have limited financial resources. If the City permits three non-disabled unrelated adults to live together in a single family home, then the FHA would require the City to accommodate the Plaintiffs to afford an equal opportunity to use and enjoy a dwelling, as long as the accommodation is reasonable and necessary.

The Plaintiffs have presented evidence that the requested accommodation is reasonable and necessary because it most effectively serves A.D.'s desire to live in his current home and IAG's mission to provide residential services to disabled adults in a community-based setting. Although group homes are necessary for many disabled adults in order to live independently, group homes are in short supply. It took several months for IAG to find a home that would accommodate the needs of its clients.

It does not appear that the City ever specifically addressed the Plaintiffs' request for a reasonable accommodation. At the city council hearing, the police chief stated that the property was not a problem and an alderman acknowledged there had been "no issues" at the home. It appears that the CPU was not granted simply because the home was not in compliance with the spacing rule. Although the Code envisions non-compliance and provides a process and standards for granting a CPU, it does not appear that the City engaged in that process by considering whether the Plaintiffs had met the standards for eligibility for a CPU.

The Plaintiffs note that a number of the City's elected officials suggested that the fact that the Noble home did not conform with the spacing rule warranted denial of the CPU application. If that was the sole reason for the denial, then the City could not have complied with the FHA's reasonable accommodation provision, which requires it to make changes in order to provide a disabled individual housing equal to those who are not disabled. *See Good Shepherd*, 323 F.3d at 561.

The Plaintiffs state that emergency services have not been called to the Noble home in the three years since it opened. IAG has made no requests for City services, such as street signs or traffic signals. It would cost the City no money to allow A.D. and the other residents to remain in the Noble home. Moreover, Chief Winslow stated there had been no problems at the Noble home.

15

The City alleges the Plaintiffs failed to establish the first requirement for eligibility for a CPU, by not addressing whether the Noble home would have a detrimental effect upon the residents of nearby facilities when located within 600 feet. The Sparc residence was first and its residents have an interest in facilitating their own integration into the community without the area becoming a cluster of group homes. The City contends that the Plaintiffs have not attempted to show that the location of the Noble home within 160 feet from the Sparc house will have no "adverse impact" upon the residents of the Sparc house.

However, the Court concludes that any potential "adverse impact" to the residents of the Sparc house due to the close proximity of the Noble home is entirely speculative. The only evidence before the Court is that there has been almost no interaction between the residents of the two homes over the course of three years. On one occasion, a resident of the Sparc home mistakenly wandered in to the Noble home. There simply is no basis to conclude that the continued existence of the Noble home will have any effect on the ability of the Sparc residents to integrate into the community.

Based on the foregoing, the Court concludes that the Plaintiffs are likely to prevail on their reasonable accommodation claim.

### (3) Preliminary Injunction Elements

The Court earlier noted the City was only contesting whether the Plaintiffs could establish a likelihood of success on the merits. The City does not dispute that Plaintiffs can meet the other elements for a preliminary injunction. The irreparable harm that would likely ensue is that A.D. would be forced to move out of the Noble home. The residents of the Noble home would have 30 to 90 days to move. Because of the nature of their disabilities, it would be very difficult to find a suitable residence in that time frame. The Plaintiffs state that A.D. could suffer negative health consequences.

The Court further finds that an award of money damages would not prevent these harms. Moreover, any post-trial relief would come too late to avoid the injuries that would result if preliminary injunctive relief is not granted. Accordingly, the Plaintiffs have demonstrated a likelihood of irreparable harm if a preliminary injunction does not issue.

The Court also concludes that a preliminary injunction would serve the public interest.

### IV. CONCLUSION

The Court finds that the Plaintiffs have established each of the prerequisites for

granting a preliminary injunction. The Plaintiffs have demonstrated a substantial likelihood of success on the merits of their discrimination and reasonable accommodation claims and that the Defendant's conduct violates the FHA and the other federal statutes as alleged in the complaint. Absent preliminary injunctive relief, the Plaintiffs will suffer immediate and irreparable harm if they remain subject to eviction from the Noble home.

Ergo, the Plaintiffs' Motion for a Preliminary Injunction [d/e 7] is ALLOWED.

The City of Springfield is hereby enjoined from instituting eviction proceedings against the Plaintiffs in order to permit continued operation of the three-person home for persons with disabilities at 2328 Noble Avenue, while this case is pending.

This case is referred to United States Magistrate Judge Tom Schanzle-Haskins for a scheduling conference.

ENTER: August 2, 2017

        FOR THE COURT:

                                    /s/ *Richard Mills*
                                    Richard Mills
                                    United States District Judge