IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| MARY B. VALENCIA, et al., | ) | |
| | ) | |
|  Plaintiffs, | ) | |
| | ) | |
|  v. | ) | Case No. 16-3331 |
| | ) | Consolidated with |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | Case No. 17-3278 |
| | ) | |
|  Defendant, | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
|  Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | |
| | ) | |
|  Defendant. | ) | |

OPINION

RICHARD MILLS, United States District Judge:

  This is a consolidated action, wherein each party has moved for summary judgment.

  The Court now considers the Motion of Plaintiff United States of America for Summary Judgment on liability and Defendant City of Springfield's Motion for Summary Judgment on the issues of jurisdiction, civil penalties and damages.

1

# I.  INTRODUCTION

Plaintiffs filed this case when Defendant City of Springfield ("the City") refused to grant a zoning permit to allow a group home for three men with intellectual and physical disabilities to remain open.  This Court granted the Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs were likely to succeed in showing the City had violated the Fair Housing Act ("FHA") by discriminating on the basis of disability.  The Seventh Circuit affirmed.

Plaintiff United States of America alleges the City's conduct constitutes both a "pattern or practice" of discrimination and a denial of rights to a group of persons that raises an issue of general public importance.  The United States asks the Court to grant summary judgment to the United States as to Springfield's liability and order the City to submit a plan to remediate its violations.

# II.  FACTUAL BACKGROUND

## Reaction to FHA amendment

After the FHA was amended to prohibit discrimination against persons with disabilities, Illinois enacted the Illinois Community Residence Location Planning Act which required home-rule cities to develop a plan to comply with these new prohibitions.  Daniel Lauber was a consultant to the Illinois Planning Council on Developmental Disabilities.  In that capacity, he provided guidance to cities in order

to comply with the FHA.  The City submitted its plan for compliance with the FHA amendments to Mr. Lauber.

On August 30, 1990, Mr. Lauber sent a letter to the City advising that its plan to amend its zoning code to comply with the FHA was "excellent" and that, upon enactment, the "City of Springfield will be in compliance with the requirements of both the Illinois Community Residence Location Planning Act and the Fair Housing Act, as we understand the act and case law interpreting it."  The City alleges that, at the time he sent the letter, Mr. Lauber was concerned that because the definition of group home included a range of numbers of residents which overlapped the number of unrelated residents allowed in the definition of family, there might be uncertainty or ambiguity about whether a group home with 5 or fewer residents should be subjected to requirements of group homes instead of being considered a family.  Mr. Lauber was directed by a member of the staff of the Governor at the time not to raise such concerns with the cities he was advising.

Mr. Lauber drafted the recommendations to the Illinois General Assembly which were submitted on January 31, 1991 by the Illinois Planning Council.  In that recommendation, Lauber reported that 76 of the cities which participated in the Council's analysis had spacing requirements for community residences within single family zoning districts: 20 cities required 600 feet or less, 8 required 601 to 999 feet separation, 36 required 1000 feet and 12 required more than 1320 feet.

Since the City adopted the changes to the zoning ordinance endorsed by Mr. Lauber in 1990, the City has sought to enforce the 600 foot spacing provision on only two occasions, both in the summer of 2016.

The Group Home at 2328 S. Noble Ave.

In 2014, Plaintiff Individual Advocacy Group ("IAG") began operating a group home for three persons with disabilities located at 2328 S. Noble Ave., in a residential zoning district in Springfield. IAG is licensed to provide these services by the State of Illinois through the Illinois Department of Human Services.

The home at 2328 S. Noble Ave. is a Community Integrated Living Arrangement ("CILA") and, as such, it is approved, licensed, funded and overseen by the State of Illinois. The CILA program is the means by which, through Medicaid, the State of Illinois provides community-based residential services to persons with intellectual disabilities. *See* Ill. Admin. Code tit. 59, pt. 115. Its purpose is to enable persons with intellectual disabilities to live in the community rather than in institutional settings, in order to "promote optimal independence in daily living and economic self-sufficiency of individuals with a mental disability." *Id*. § 115.100(b). CILAs are permitted to have up to eight residents.

As a licensed CILA, 2328 S. Noble Ave. must "be typical of homes in the community and residential neighborhood" and its presence must "not appreciably alter the characteristics of the neighborhood." *Id*. § 155.310(a). Consistent with this

4

mandate, 2328 S. Noble Ave. is a ranch-style, three bedroom home that does not appear outwardly different from other homes on the block. The home has created no traffic or parking issues for the City. It also has not been the subject of any police or emergency calls, other than a domestic disturbance call in 2014 that was unrelated to and did not involve the residents.

Since the spring of 2014, 2328 S. Noble Ave. has been the home of J.D., a 35-year-old man with intellectual and physical disabilities, and J.M., A 36-year-old man with intellectual disabilities. Another adult man with intellectual and physical disabilities, A.D., lived with J.D. and J.M. at 2328 S. Noble Ave. until his death in September 2017.

The residents of 2328 S. Noble require 24-hour assistance with their activities of daily living including bathing, dressing and eating, and they receive those services in the home from the staff of IAG. Additionally, J.D. and J.M. attend an IAG-run program with supported employment services during the day. A.D. was medically fragile prior to his death and received day support services from IAG at home. Typically, two staff persons are present when the three residents are at home and awake, and one staff person is at home at other times.

Through their guardians, the residents of 2328 S. Noble lease the home directly from the landlords, Christine and Robyn Hovey. With the families' consent, IAG handles rental payments and other administrative functions related to the

tenancy. This is consistent with federal law governing Medicaid-funded community residential services for persons with disabilities. *See* 42 C.F.R. § 441.301(c)(4)(vi)(A) (residential services should be provided in a "unit or dwelling . . . that can be owned, rented, or occupied under a legally enforceable agreement by the individual receiving services").

The first tenant to sign the lease for 2328 S. Noble was A.D., through his sister and guardian Mary Valencia. A.D. lived alone at the home for approximately six weeks before J.D. and J.M. moved in. At the time Ms. Valencia signed the lease on behalf of A.D., both she and IAG were unaware that an agency called Sparc operated another CILA on the same block of S. Noble Ave.

J.D. primarily uses a wheelchair to ambulate, as did A.D. 2328 S. Noble Ave is fully accessible to persons with disabilities. The Hoveys modified the home at their own expense to make it more physically accessible by, for example, installing lowered kitchen countertops, accessible door thresholds, a roll-in shower and accessible sliding doors opening onto the back patio.

The guardians of J.D. and A.D. as well as IAG found it difficult to locate physically accessible housing in the City and spent months looking for a suitable location for the residents. This difficulty is consistent with the City's statements that there is a "drastic shortage" of housing for persons with disabilities in Springfield. Because the City receives funds under the federal Community Development Block

Grant program, it is required to identify impediments to fair housing within the City, including unmet demands for particular kinds of housing. In its periodic submissions to the U.S. Department of Housing and Urban Development ("HUD"), the City has acknowledged an unmet demand for housing that is accessible for people with disabilities.

Before moving to 2328 S. Noble, A.D. was institutionalized at the Murray Developmental Center, a large congregate living facility in Centralia, IL, more than two and one-half hours away from his family in Springfield. After moving to 2328 S. Noble, A.D.'s developmental skills improved and he gained the ability to feed himself using adaptive utensils and even to walk a few steps with assistance.

J.D. also lived in a large congregate facility, Brother James Court in Springfield, before moving to 2328 S. Noble. Living in a physically accessible single-family home in the community has provided him with the independence he lacked in the institution.

J.M. has lived in group homes since he was three years old. His father says he loves living at 2328 S. Noble Ave. In prior situations, including the institutional settings, the 2328 S. Noble residents were required to share bedrooms with others and had little privacy or personal space, had their belongings stolen or broken and experienced bullying or violence at the hands of other residents. At 2328 S. Noble, the residents have their own private bedrooms and have not experienced any bullying

or theft.  In addition, the residents' family members live nearby in Springfield and both J.D.'s and A.D.'s families are or were able to see them more often than when they were institutionalized.  According to their guardians, the residents of 2328 S. Noble view themselves as a family and the house as their home.

City's zoning of group homes for persons with disabilities

The City claims it amended its ordinance in 1990 for the express purpose of complying with the FHA.  The United States disputes the assertion, stating that the City presents no evidence or citation to the record regarding its express purpose.  Moreover, the United States claims the purpose behind the City's 1990 zoning amendment is irrelevant as to the City's liability and as to whether the United States has a cause of action under either prong of 42 U.S.C. § 3614(a).

The City alleges it relied on the state's own expert to draft the amendments.  The United States disputes the assertion on the basis that the City provides no evidence in support.

The City claims the state's expert was aware of an ambiguity trap in the amendments for the City and numerous other cities but was prevented from warning the City and other cities.

The City alleges that for more than 25 years, it never addressed the matter of spacing of group homes.  The United States disputes the assertion, noting that in 1995, the City opined that a group home for persons with disabilities would not have

to comply with the spacing ordinance if the home had five or fewer residents. Moreover, the City has known that 2328 S. Noble was operating as a group home on the same block as a Sparc group home since at least September 2014.

Springfield's zoning ordinance defines "family" as: "One or more persons each related to one another by blood, marriage, or adoption, or is a group of not more than five persons not all so related occupying a single dwelling unit[.]" Springfield Zoning Code ("Code") § 155.001. Families are permitted to live in residential zoning districts as a matter of right in Springfield.

Unlike "family" residences, group homes like 2328 S. Noble are only permitted in residential neighborhoods if they comply with the City's 600-foot spacing rule for "community residences." Code § 155.053. A "community residence" is defined in part as a "single dwelling unit occupied on a relatively permanent basis in a family-like environment by a group of unrelated persons with disabilities, plus paid professional support staff provided by a sponsoring agency[.]" *Id*. § 155.051. This term includes group homes for persons with intellectual disabilities, as well as for the elderly, persons with physical disabilities, and persons with mental illness. It also includes CILAs and group homes of all sizes, including "family care residences," which are "community residences" for up to six persons, excluding support staff. Code § 155.053.

Since 1990, Springfield's zoning ordinance has restricted the locations of "community residences" through its spacing rule, which provides that a "community residence" may not be located within 600 feet of another "community residence" in a residential zoning district unless the home obtains a Conditional Permitted Use ("CPU") permit. According to Springfield's current Zoning Administrator, former Assistant Zoning Administrator and Rule 30(b)(6) designee, Matthew McLaughlin, Springfield has never granted such a CPU permit.

The zoning ordinance states that the purpose of the 600-foot spacing rule is "to ensure that community residences, which operate most effectively in residential environments, do not adversely affect those environments through over concentration or improper operation." Code § 155.053. The City of Springfield does not maintain a list of "community residences" or otherwise track their locations to ensure compliance with the 600-foot spacing rule or any other purpose. The 600-foot spacing rule for "community residences" applies solely to housing for persons with disabilities, and not to housing for "families."

The City's 30(b)(6) representative, Matthew McLaughlin, confirmed that Springfield's zoning definition of "family" includes groups of up to five unrelated persons. Moreover, the City has consistently interpreted and applied the "family" definition to include groups of up to five unrelated persons since at least the early 1990s. However, the City contended earlier in this litigation that "five unrelated

persons cannot be considered a family" for zoning purposes, and therefore "could not legally occupy a single family home." Doc. No. 15, at 7. The City further claimed that "the phrase 'not more than five persons not all so related' in the definition [of "family"] is meant as a safe harbor allowing a traditional family to take in a[n] unrelated boarder without losing the right to occupy a single family home (subject to a maximum of five total persons)." *Id.* The Court rejected the City's interpretation and upon losing on appeal, *see Valencia v. City of Springfield*, 883 F.3d 959, 971 (7th Cir. 2018), the City abandoned it.

The City now concedes there was no factual basis for the argument that the provision for unrelated persons in its definition of "family" was intended to provide a "safe harbor" to "traditional famil[ies]" wishing to take in "an unrelated boarder." Prior to this litigation, Springfield had never before construed or enforced the definition of "family" to require that at least two persons be related. Contrary to its prior contentions, therefore, Springfield permits five unrelated persons without disabilities to reside together as a "family" anywhere in a single-family residential zoning district as a matter of right, while requiring five unrelated persons with disabilities living in a "community residence" to obtain a special permit to live in a single-family zoning district if another "community residence" is located within 600 feet. *See* Code § 155.053.

Springfield's enforcement of the 600-foot spacing rule

Springfield has known since at least September 2014 that 2328 S. Noble was operating as a group home on the same block as a Sparc group home. In September 2014, the City's zoning department received an anonymous complaint about 2328 S. Noble, which was recorded by the City's Assistant Zoning Administrator, John Harris, as follows: "Group Home? Uncertain # of people there 4+?/ plus a Sparc Home is at 2317 Noble." Zoning department staff preliminarily investigated the complaint by pulling property tax records for the two homes and noting the number of people living at 2328 S. Noble but took no further action to address it at that time.

In the spring of 2016, the City initiated a zoning enforcement action based on the 600-foot spacing rule against a different small group home operated by IAG at 137 Pinehurst Drive. The landlords of that house submitted a petition for a CPU permit and a request for a reasonable accommodation so that the group could remain open. In August 2016, the City denied the 137 Pinehurst CPU permit request. The home closed shortly thereafter.

In August 2016, days before the City denied the 137 Pinehurst CPU petition, the City also initiated a zoning enforcement action based on the 600-foot spacing rule against 2328 S. Noble Ave. On October 17, 2016, in response to this enforcement action, the Hoveys and IAG applied for a CPU permit. They also requested a reasonable accommodation to allow the three residents to remain in their home notwithstanding the 600-foot spacing rule, based on the residents' disabilities

and need for housing in the community. They attached documentation in support of these requests, including information about IAG, the most recent national accreditation report on IAG, photographs of the home and an expert's summary of studies showing that small group homes like 2328 S. Noble do not have an adverse impact on residential neighborhoods.

(1) The Staff Recommendation

About one month later, the Springfield Planning and Zoning Commission received a recommendation from its professional staff to deny the CPU petition. The staff report concluded that "[t]he evidence provided in the petition does not provide sufficient detail to allow staff to make a reasonable determination whether the design and method of operation of the proposed use will minimize the adverse effects on the character of the surrounding area[.]" The report did not explain what "adverse effects" the home was creating. The report also did not identify or request any additional information that would have allowed the Commission to determine how these effects could be minimized.

The professional staff declined to address the request for a reasonable accommodation, stating that they were "unable at this time to provide an expert opinion on . . . this part of the request[.]" The City states it considered the denial of the CPU to also be a denial of the request for reasonable accommodation.

(2) Springfield Planning and Zoning Commission Hearing

The City's Planning and Zoning Commission scheduled a hearing on the 2328 S. Noble Ave. CPU permit application for November 16, 2016. Prior to that hearing, the City erected a sign on the front lawn of the home to notify the neighbors about the pending zoning case.

Early in the November 16, 2016 Planning and Zoning Commission hearing, before most of the testimony and evidence had been presented, Assistant Corporation Counsel Linda O'Brien provided legal advice to the Commissioners about Springfield's definition of "family." Consistent with Springfield's longstanding enforcement practices, Ms. O'Brien explained that three unrelated persons could lease a home together as a "family." She further opined that the three residents of 2328 S. Noble did not qualify as a "family" because their residence was a "group home" and, therefore, the 600-foot spacing rule applied to them.

The 2328 S. Noble Ave. petitioners presented evidence about the home and its minimal impact on the surrounding neighborhood, including testimony that there was no interaction between the home and the nearby Sparc CILA, that the landlords had made extensive modifications to the home to make it physically accessible, and that the residents' quality of life had improved in the family-like atmosphere of the home. The Executive Director of IAG testified that if 2328 S. Noble were forced to close, the residents "would lose their home," and that "[t]here was absolutely

nowhere else where [IAG] would be able to accommodate them. . . . It would be tragic. It would be devastating."

The petitioners also presented an expert witness who opined that: (1) 2328 S. Noble Ave. should not be subject to the 600-foot spacing rule because the three unrelated persons living there qualified as a "family" under the zoning code; and (2) even if the 600-foot spacing rule did apply, the home was entitled to a CPU permit.

Lorraine Iocca, the mother and guardian of J.D., testified that her son had previously lived in a large institution where he shared a room with three other men, routinely had his belongings stolen and was physically assaulted by other residents. She stated that it had taken several months to find a new home for him and that he was very happy at 2328 S. Noble. She explained that he loved his fellow housemates and the IAG staff, that the house was perfect to accommodate his disabilities, and that he considered 2328 S. Noble to be his home.

At the conclusion of the hearing, the Planning and Zoning Commission voted 4-3 to adopt the staff recommendation to deny the CPU permit. In voting to deny the CPU request, one Commissioner referenced the Commission's earlier vote to deny a CPU to the 137 Pinehurst home and expressed the concern that granting the 2328 S. Noble petition would set a bad precedent.

### (3) The City Council Hearing

On December 20, 2016, the City Council held a hearing on the 2328 S. Noble

CPU application. The petitioners reiterated their request that the CPU be granted and, in the alternative, that the City grant a reasonable accommodation to allow the residents to remain in their home.

William McCombs, the father and guardian of J.M., testified at the hearing and urged the Council to recognize that denying the CPU permit would amount to discrimination on the basis of disability. He noted that 2328 S. Noble was indistinguishable from the other homes on the block and that the group home had been open for nearly three years without incident. He asked the City to make an exception to the 600-foot spacing rule and not to deprive the residents of their housing simply "because they're different."

The Chief of Police told the City Council that, to his knowledge, there had been no police calls or disturbances at 2328 S. Noble. An Alderman also acknowledged that there had been "no issues" with the home in the years it had been operating.

The City Council voted 8-2 to adopt the Planning and Zoning Commission's recommendation and deny the CPU permit. The City Council did not address the request for a reasonable accommodation. The City states that it considered the denial of the CPU to also be a denial of the request for reasonable accommodation.

In advocating for the denial, one Alderman repeated the concern about setting a bad "precedent" and another Alderman stated that he did not "think it's fair that

we would decline one and allow the other," referring to the denial of the 137 Pinehurst CPU request. The Mayor also warned that granting the CPU permit would set a precedent.

Springfield has never granted a CPU permit or a reasonable accommodation request to relieve a group home from the 600-foot spacing requirement. The City has no process or policy for handling reasonable accommodation requests in zoning and land-use matters. The City disputes that it has no process or policy, claiming that it considered the CPU process to be a reasonable accommodation. If Springfield had considered the three residents of 2328 S. Noble to be a "family," the home would have been permitted as of right and not subject to the City's 600-foot spacing rule.

Subsequent proceedings and Springfield's admissions

The private Plaintiffs filed suit on December 22, 2016, two days after the City Council voted to deny the 2328 S. Noble CPU petition. On January 11, 2017, the private Plaintiffs moved for a preliminary injunction that would prevent the City from evicting the residents of 2328 S. Noble during the pendency of this litigation. The Court granted the preliminary injunction on August 2, 2017. The United States Court of Appeals for the Seventh Circuit affirmed the Court's decision on March 1, 2018.

Following the Seventh Circuit's decision, the City sought leave to file new answers to the private Plaintiffs' and United States' complaints, in order to "simplify

the proceedings in this case by not contesting liability for violation of the Fair Housing Act." The City noted it had "consistently represented to this Court" that it would amend its ordinance if its appeal failed and stated that it was "considering" those amendments as of June 2018.

The magistrate judge granted the City leave to amend its answers. The City admitted that its "zoning ordinance applicable to group homes for disabled persons, as in effect on the filing dates of the complaints, discriminated against the residents of the group home located at 2328 Noble Ave., Springfield, IL ('Noble Home'), on the basis of disability in violation of federal law." The City further denied "any specific intent to discriminate" or "to violate applicable federal laws . . . at the time the zoning ordinance was enacted." Additionally, the City specifically admitted that section 155.053 (the 600-feet spacing rule for group homes for persons with disabilities) and section 155.211.1 (the requirements to obtain an exception to the spacing rule) of its zoning code were discriminatory.

The City alleges that in 2016, when finally faced with the issue, the City fell into the very ambiguity trap the state's expert knew of but was prevented from warning the City about. The United States claims it does not know what the City means by this assertion, given that the City cites no evidence in support.[1]

---

[1] Presumably, this is in regard to Mr. Lauber's concern that because the definition of group home included a range of numbers of residents which overlapped the numbers of unrelated residents allowed in the definition of family, there could be uncertainty about whether a group home with 5 or fewer residents

More than a year after assuring the Court that it would amend its zoning ordinance, the City has not done so.

## III.    DISCUSSION

The United States seeks summary judgment as to the City's liability for violating the Fair Housing Act, 42 U.S.C. §§ 3601-3631.  The United States claims that, by maintaining and enforcing a discriminatory zoning code and refusing to grant a CPU permit or reasonable accommodation to allow the residents of 2328 S. Noble to remain in their home, the City has discriminated in the sale or rental of dwellings, or otherwise made dwellings unavailable, to persons because of disability, in violation of 42 U.S.C. § 3604(f)(1); discriminated against persons in the terms, conditions, or privileges, of a dwelling because of a disability, in violation of 42 U.S.C. § 3604(f)(2); and refused to make reasonable accommodations in rules, policies, practices, or services which may be necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).  According to the United States, this constitutes both a "pattern or practice" of resistance to the full enjoyment of the rights granted by the FHA and a denial of the rights of a group of persons raising an issue of general

---

should be subjected to the requirements of group homes instead of being considered a family.  Mr. Lauber testified he was prevented from raising that concern because it was an election year.

importance, within the meaning of 42 U.S.C. § 3614(a). For these reasons, the United States seeks the entry of summary judgment against the City on liability.

The United States also asks the Court to order the City to submit a plan to expeditiously remediate its violations of the FHA, in light of the City's ongoing failure to amend what it has admitted is a discriminatory zoning ordinance.

In its response, the City acknowledges that its ordinance as applied in this case violated the FHA. However, that alone does not establish the right of the Attorney General to bring a case under 42 U.S.C. § 3614. The City contends the United States has not shown a pattern or practice of discrimination and the summary judgment motion should be denied.

The City's motion for summary judgment addresses whether the United States has jurisdiction to bring this action through the Attorney General by alleging a "pattern or practice" of discrimination. It is also directed at the claims for civil penalties as well as for compensatory damages on behalf of the five persons identified as aggrieved parties. The City denies that it engaged in a pattern or practice of discrimination and also denied the ordinance was adopted or applied with any intent to discriminate against disabled persons. The City claims as a matter of law, it cannot be assessed civil penalties and the Court cannot award damages to the residents of the group home, their guardians or the residential services provider that operates the home.

The United States claims judgment should be entered in its favor because the City has engaged in a "pattern or practice" of discrimination as well as a "denial of rights" to a "group of persons" which raises an issue of "general public importance." The issues of civil penalties and damages turn on factual disputes and, according to the United States, there is ample evidence in the record which would allow the fact finder to award those remedies. Accordingly, the United States contends the City's motion should be denied.

Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

## A. UNITED STATES' PARTIAL MOTION AS TO LIABILITY

<u>Whether the City committed a Fair Housing Act violation</u>

In an August 2, 2017 Opinion granting the Plaintiffs' motion for preliminary injunction in the first-filed case, the Court held that Plaintiffs were likely to succeed on their claim that Springfield's 600-foot spacing rule for group homes for persons with disabilities was intentionally discriminatory in violation of the FHA. The United States seeks summary judgment on its claims under 42 U.S.C. §§ 3604(f)(1)(B) and (f)(2), on the basis that the undisputed record supports the Court's analysis.

The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling. . . ." 42 U.S.C. § 3604(f)(1)(B). The Act also prohibits discrimination against such individuals in the "terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." *Id*. § 3604(f)(2). "Congress explicitly intended for the [Fair Housing Amendments Act] to apply to zoning ordinances and other laws that would restrict the placement of group homes" for persons with disabilities. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (citations omitted).

The Sixth Circuit has concluded "statutes that single out for regulation group homes for the handicapped are facially discriminatory." *See Larkin v. Mich. Dep't of Social Servs.*, 89 F.3d 285, 290 (6th Cir. 1996). The Tenth Circuit has held that if a zoning ordinance "single[s] out the handicapped and appl[ies] different rules to them," its "discriminatory intent and purpose" is "apparent on [its] face." *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500 (10th Cir. 1995). A plaintiff need not prove "malice or discriminatory animus of a defendant" to establish discrimination if the defendant treats someone protected by the FHA differently than others. *Id*. at 1500-01.

Even when the facts are construed in a light most favorable to the City, the Court finds the record establishes that the City's enforcement action against 2328 S. Noble demonstrates that the spacing rule treats group homes for up to five unrelated individuals with disabilities less favorably than it does a similarly situated living arrangement consisting of up to five unrelated non-disabled people. By maintaining the discriminatory spacing rule and enforcing it against the 2328 S. Noble group home, the City has denied housing and made it unavailable on the basis of disability, in violation of 42 U.S.C. § 3604(f)(1)(B). The spacing rule renders certain housing "unavailable" to persons with disabilities that would otherwise be available. The 600-foot spacing rule on group homes for individuals with disabilities that does not apply on comparable housing for non-disabled individuals plainly imposes

discriminatory "terms" and "conditions" on housing on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2).

Although the City now claims that the zoning ordinance "as applied in this case" violates the FHA, the City previously admitted in its Amended Answer "that its zoning ordinance applicable to group homes for disabled persons, as in effect on the filing dates of the complaints, discriminated against the residents of the group home located at 2328 Noble Ave. ('Noble Home'), on the basis of their disability in violation of federal law." Accordingly, it is undisputed that the spacing rule discriminates on the basis of disability.

<u>Pattern or practice of discrimination and denial of rights under the FHA</u>

The United States is authorized to bring suit under the FHA "[w]henever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by" the FHA, "or that any group of persons has been denied any of the rights granted by" the FHA "and such denial raises an issue of general public importance." 42 U.S.C. § 3614(a).

The City claims that absent proof of a pattern or practice of discrimination, the Attorney General lacks jurisdiction under § 3614(a) to bring this action and its motion for partial summary judgment on liability must be denied.

The City contends that, for more than 25 years after the adoption of the ordinance, it never had occasion to invoke the CPU process. In the summer of 2016, two group homes—both of which were operated by the same organization—were brought to the City's attention.

Even upon construing all inferences in favor of the City, the Court concludes that the City's conduct satisfies both prongs of the provision. While "[p]roof of isolated or sporadic acts of discrimination does not suffice to prove a 'pattern or practice'" the United States establishes a "pattern or practice" of discrimination in violation of the FHA if the facts demonstrate that the discrimination at issue is the defendant's "standard operating procedure—the regular rather than the unusual practice." *United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir. 1992).

It is undisputed that the City's zoning ordinance constitutes a discriminatory policy which is sufficient to establish a "pattern or practice" of discrimination. On the two occasions the City was asked to grant an exception to its spacing rule, the City refused to do so. Moreover, certain City decision-makers stated they were concerned about setting a bad "precedent" if they granted the 2328 S. Noble CPU, which suggested they intended to take the same action in any future spacing rule cases. It is apparent this was standard operating procedure and the City would have made the same decision if other group homes were brought to its attention. Thus, any group home that attempted to circumvent the ordinance would have been

operating under a constant risk of eviction. The City's assertion that it reasonably believed the ordinance complied with the FHA and that it lacked any discriminatory motive does not absolve the City of liability. Accordingly, the Court concludes that the City is liable for engaging in a "pattern or practice" of discrimination in this case.

The Court further finds that by applying the spacing rule to 2328 S. Noble Ave. and refusing to make an exception as a reasonable accommodation for the three residents, the City also denied rights granted by the FHA to a group of persons. Moreover, the availability of community-based housing for persons with disabilities is most assuredly an "issue of general public importance." Accordingly, the Court concludes that the City is also liable for denying fair housing rights to a group persons, raising an issue of general public importance.

Based on the foregoing, the Court concludes that summary judgment in favor of the United States and against the City of Springfield is warranted as to liability.

## B. CITY OF SPRINGFIELD'S SUMMARY JUDGMENT MOTION

The Court has already determined the United States has established that the City engaged in a "pattern or practice" of discrimination and a denial of rights to a group of persons within the meaning of 42 U.S.C. § 3614(a). Therefore, the City's motion on the United States' § 3614(a) claim will be denied.

<u>Civil penalty</u>

The FHA authorizes the Attorney General to seek a civil penalty "to vindicate the public interest." 42 U.S.C. § 3614(d)(1)(C). The City contends § 3614 does not "expressly authorize" civil penalties against municipalities, citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981), wherein the Supreme Court held that municipalities are immune from punitive damages under 42 U.S.C. § 1983. *See id.* at 271. While the statute does not expressly authorize such penalties, the statute does not preclude civil penalties against municipalities. Section 3614 does not identify the types of entities that are subject to civil penalties. The plain language requires only that a civil penalty be in the "public interest." The fact that punitive damages are unavailable against municipalities has no bearing on whether civil penalties are available against municipalities under the FHA. The Parties cite cases wherein civil penalties under the FHA were awarded against municipalities. Accordingly, there is no question civil penalties are available in appropriate circumstances.

In determining whether to assess any civil penalty and the amount thereof, courts should consider "the nature and circumstances of the violation, the degree of culpability, any history of prior violations, the financial circumstances of that defendant and the goal of deterrence, and other matters as justice may require." *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 798 (6th Cir. 1996) (quoting H.R. Rep. No. 100-711, 100th Cong., 2d Sess. 40 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2201).

The City contends there is no substantial evidence which would support a finding that the City's action was motivated by an intent to discriminate against disabled persons. When the FHA was amended to prohibit housing discrimination based on disability, the City amended its zoning ordinance to comply with the new requirements. The City also worked with an expert hired by the state. The expert, Daniel Lauber, deemed the City's amendments "excellent." Mr. Lauber specifically cited the 600 foot spacing requirement as an "essential criteri[um]" and lauded the conditional permitted use process as an alternative for homes that did not meet the spacing requirement.

The City alleges Mr. Lauber was prevented from warning of an ambiguity that concerned him when the City enacted the ordinance. Mr. Lauber was concerned that if the number of residents of the group community residence was less than the maximum number of unrelated residents of a family, the City might be liable for discrimination if it applied the group community residence standards.

The City alleges that for more than 25 years, it was never called upon to apply the spacing requirement for neighboring group homes until 2016, upon encountering two homes occupied by IAG. Both group homes were within 600 feet of group homes operated by SPARC.

The City states that it encouraged the owners of the Noble home to apply for a CPU to allow its continued operation. It alleges, however, that the applicants

apparently did not present any evidence to the Planning Commission regarding whether the close proximity of the group homes would adversely affect the first group home.

For that reason, the City claims that the Commission found insufficient evidence and recommended denial of the petition. The City asserts there is no indication that bias against disabled persons was a consideration.

The City further claims that when the City Council considered the issue following the Commission's recommendation at its December 20, 2016 meeting, no evidence of bias was shown. The discussion was focused on the requirements of the ordinance.

When the facts are viewed in a light most favorable to the United States, the Court finds that the evidence could show that the City disregarded its obligations under the FHA by depriving persons with disabilities of their right to live in the community by maintaining and enforcing what they now admit was a discriminatory ordinance and refusing to grant an exception. Moreover, even if the City in 1990 did not believe the ordinance was discriminatory, there have been a number of court decisions since then which found that enforcing space requirements against group homes for persons with disabilities may violate the FHA. Accordingly, the City could have been on notice by 2016 that the ordinance was potentially discriminatory.

Additionally, a group home for three residents fits squarely within the zoning ordinance's definition of family, which included residences of up to five unrelated individuals, so it should have been allowed as of right. The fact that the City treated group homes for persons with disabilities differently than similarly-sized homes of persons without disabilities in violation of the FHA could be viewed to support a civil penalty.

Even if the law concerning the FHA's disability provisions was unsettled in 1990, it was not unsettled in 2016. The Seventh Circuit had determined a decade earlier that cities must consider and may be required to grant reasonable accommodations to the requirements of their zoning ordinances under the FHA. *See Oconomowoc*, 300 F.3d at 783-84; *Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748-49 (7th Cir. 2006). The City's continuous efforts to shut down 2328 S. Noble despite this applicable case law could justify the assessment of a civil penalty.

Additionally, there is at least a question of fact regarding whether the City Council's discussion of the CPU petition focused on the requirements of the ordinance. Based on the testimony of two aldermen, a reasonable fact finder could find that the requirements of the ordinance was not the only consideration and that the residents' disabilities factored into the City's decision.

Actual damages

The City contends the United States cannot obtain money damages for any "aggrieved persons" because no party has suffered any damages. The aggrieved persons include: Mary Valencia, guardian of A.D., deceased; Noble Home resident, J.I.; Lorraine Iocca, guardian of J.I.; Noble home resident J.M.; and William McCombs, guardian of J.M. The City has issued no citations, served no notice of violation, began no eviction proceedings, sent no letters and did not discuss this or any other matter with the residents of the home. Since the Seventh Circuit ruled in favor of the Plaintiffs, the City states that it amended its answer and began the process of amending its ordinance and it no longer considers the Noble home to be in violation of any ordinance.

The City further notes that each of the guardians testified they had not begun the process of searching for alternative housing. They incurred no expenses. Neither they, nor their wards, suffered any physical injury to person or property.

The FHA provides that in a case brought by the United States under § 3614(a), a court "may award . . . monetary damages to persons aggrieved." 42 U.S.C. § 3614(d)(1)(B). An "aggrieved person" includes "any person who claims to have been injured by a discriminatory housing practice." *Id*. § 3602(i)(1). The Seventh Circuit has held that the United States may seek and obtain monetary damages for any person who is harmed by a defendant's discriminatory housing practice, as long as the United States gives adequate notice to the defendant that it is seeking damages

for such persons.  *See Balistrieri*, 981 F.2d at 928, 935-36.  The United States notes

that it disclosed in its Complaint and its discovery responses that it was seeking

damages for the residents of 2328 Noble and their guardians and for the provider,

IAG.  The United States claims the evidence supports a finding that the residents of

2328 Noble, their guardians and IAG are entitled to damages.

The City alleges there was no intent to discriminate, much less no intent to

cause emotional distress.  The Seventh Circuit has "long held that emotional distress

caused by housing discrimination is a compensable injury under the Fair Housing

Act."  *Balistrieri*, 981 F.2d at 931.  However, emotional distress is not presumed

from the fact of discrimination.  *See id*.  "A plaintiff must actually prove that he

suffers from emotional distress and that the discrimination caused that distress."  *Id*.

In certain circumstances, an aggrieved person's testimony can be sufficient, either

alone "or in conjunction with the circumstances of the particular case, to establish

damages for emotional distress."  *Id*. at 932.  If the defendant's action is particularly

degrading or humiliating, it is easier to infer that a person would suffer humiliation

or distress as a result.  *See id*.  Accordingly, "somewhat more conclusory evidence

of emotional distress" can support an award for emotional distress.  *See id*.  In FHA

cases, the Seventh Circuit has "generally upheld awards for emotional distress

despite the lack of detailed description of that distress."  *Id.*

The City contends the only evidence of emotional distress in this case is testimony from the guardians that they were worried they might have to move, or that their respective wards were worried. However, the City took no action against the residents and there was no threat of removal.

The City claims that, to the extent there is any evidence of emotional distress, it mostly arises from actions of neighbors to the Noble home. Lorraine Iocca testified her son told her he was "shocked that people wouldn't want him to live there." While two of the residents of the Noble home were nervous or worried, the City alleges there is no medical evidence connecting that to the zoning proceeding.

Each of the guardians testified about how their respective wards felt when they learned it was possible that they might have to move because of the spacing requirement. The guardians also discussed their own anxiety, worry and fear. Upon viewing the evidence in a light most favorable to the non-movants, the Court finds that the record contains evidence of emotional distress that could potentially support an award of money damages to the residents of 2328 Noble and their guardians. To the extent that the City alleges any distress experienced by the residents is due to their interactions with their guardians and/or from the actions of neighbors, a jury could still decide that the emotional distress relates back to the City's discriminatory ordinance and find that monetary damages could be warranted on that basis.

Accordingly, the Court will deny the City's motion to the extent it claims the Plaintiff has not established the aggrieved parties suffered actual damages.

Ergo, the Motion of Plaintiff United States of America for Summary Judgment as to the liability of Defendant City of Springfield [d/e 91] is GRANTED.

The Clerk will terminate the duplicative Motion for Summary Judgment [d/e 27] filed in Case Number 17-3278.

The Defendant City of Springfield's Motion for Summary Judgment [d/e 88] is DENIED.

The Clerk will terminate the duplicative Motion for Summary Judgment [d/e 26] filed in Case Number 17-3278.

Within 90 days of the entry of this Order, the City of Springfield shall submit a plan to remediate its violations of the Fair Housing Act.

ENTER: March 2, 2020

    FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge
