IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MARY B. VALENCIA, et al.,            )
                                     )
        Plaintiffs,                  )
                                     )
 v.                                  )        Case No. 16-3331
                                     )        Consolidated with
CITY OF SPRINGFIELD, ILLINOIS,       )        Case No. 17-3278
                                     )
        Defendant,                   )
                                     )
UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )
CITY OF SPRINGFIELD, ILLINOIS,       )
                                     )
        Defendant.                   )


## OPINION

RICHARD MILLS, United States District Judge:

This is a consolidated action.

Each party has moved for summary judgment.

The Court now considers the Motion of Plaintiffs Individual Advocacy Group,

Mary B. Valencia, as the Independent Administrator of the Estate of A.D., and B.A.

for Summary Judgment as to the liability of Defendant City of Springfield.[1]  Those

Plaintiffs incorporate and rely upon Plaintiff United States of America's Motion for

Summary Judgment on liability, which the Court granted in an Order entered on

March 3, 2020.

The Court also considers Defendant City of Springfield's Motion for Partial

Summary Judgment on the issues of standing and damages.

## I.    INTRODUCTION

In 2014, three men with severe disabilities moved into a single-family

dwelling at 2328 S. Noble Avenue, which is in a residential neighborhood in

Springfield, Illinois.  Plaintiff Individual Advocacy Group, Inc. ("IAG") has

delivered in-home support services to the residents of 2328 S. Noble since it opened

in 2014.  IAG is a non-profit organization with the mission of providing personal

services to persons with disabilities which enable those persons to live in community

settings.  The owners of 2328 S. Noble are Christine and Robyn Hovey, through a

corporation they formed and own.

The Plaintiffs filed this case when Defendant City of Springfield ("the City")

refused to grant a zoning permit to allow a group home for three men with

---

[1] Pending also is the motion of Defendant City of Springfield to strike the motion of Plaintiffs Individual Advocacy Group, Estate of A.D. and B.A. for summary judgment.  Although the Plaintiffs' motion violates the local rule because it does not include a numbered list of undisputed material facts, the Defendant is able to respond to the assertions contained in the section titled "Undisputed Facts." Accordingly, the Court will deny the Defendant's motion to strike.

intellectual and physical disabilities to remain open. The Plaintiffs allege the City violated their clearly established rights under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, and its implementing regulations ("FHA"); Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 *et seq.* and its implementing regulations ("ADA"); and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and its implementing regulations. The Plaintiffs claim they are entitled to summary judgment as to liability.

The City acknowledges that the zoning ordinance as applied in this case violated the FHA, the ADA and the Rehabilitation Act. However, that admission alone does not establish the Plaintiffs' right to recover damages for such violation. The City contends that Plaintiffs have failed to establish standing as "aggrieved persons" under 42 U.S.C. § 3613, and thus are not entitled to summary judgment on liability.

The City's motion concerns IAG on the issue of standing to sue and whether it suffered any provable injury in fact proximately resulting from the City's application of its zoning ordinance. The City's motion is also directed at Plaintiff Mary Valencia in her representative capacity of a deceased former resident of the home at 2328 Noble, as well as current disabled resident and Plaintiff, B.A., who moved into the home on November 2, 2017, after the events complained of in the

amended complaint, and whether those Plaintiffs suffered any provable injury in fact proximately resulting from the City's actions.

The Plaintiffs contend that IAG has made legitimate claims of direct injury to its organization because of the City's conduct. The Plaintiffs assert the City has misrepresented the applicable law and relies on facts that are disputed. Accordingly, the Plaintiffs claim the City's motion for partial summary judgment should be denied.

## II.    FACTUAL BACKGROUND

The City of Springfield is a municipality. In August 2016, the City sought to shut down the Noble home because it was located on the same block as another home for individuals with disabilities operated by Sparc in violation of the City's spacing rule, which provides that no home for unrelated persons with disabilities may be located in a residential district if it is within 600 feet of another home for persons with disabilities. However, the City's Code allows a "family" to live in any residential district. Under Section 155.001, a family is defined as "persons each related to one another by blood, marriage or adoption" or "a group of not more than five persons not all so related." The three residents of 2328 Noble qualify as a "family" under that definition, given that there are less than five individuals.

Despite the statutory language, the City forced the Plaintiffs to apply to the Zoning and Planning Commission for a Conditional Permitted Use ("CPU") permit.

On October 7, 2016, IAG applied for a CPU which included a request for a reasonable accommodation to the City's rules, policies and practices if the CPU was not granted. After various hearings, the City ultimately voted to deny the CPU and evict the Noble home residents from their home. The denial of the CPU occurred on a vote of the City Council of the City of Springfield on December 20, 2016. Plaintiffs A.D. and IAG filed their initial complaint two days later.

After filing their complaint, the Plaintiffs moved for a preliminary injunction to preclude the City from evicting the residents while this action was pending. The Court granted the motion for preliminary junction. The United States Court of Appeals for the Seventh Circuit upheld the Court's preliminary injunction Order on appeal.

In Counts One, Two and Three of the amended complaint, the Plaintiffs allege violations of the FHA, Title II of the ADA and the Rehabilitation Act, respectively, all resulting from zoning ordinance enforcement activities which culminated in the City Council's denial of the CPU to allow a group home for disabled persons at 2328 S. Noble.

There is no allegation in the amended complaint that the decision of the Aldermen was influenced by a broad base of taxpayers of the City espousing discriminatory animus. There is no evidence in the record of the City Council

meeting regarding the CPU that the decision of the Aldermen was influenced by a broad base of taxpayers of the City espousing discriminatory animus.

Charlene A. Bennett, Ph.D., is the founder and CEO of Plaintiff IAG and was a Rule 30(b)(6) designee of IAG. She testified its mission was to "Provide ongoing support to children and adults with specialized needs and to do whatever it takes so they can be living a quality of life in the community." The personal services provided to the residents of the Noble home by IAG staff include eating, bathing, dressing, food preparation, shopping, home maintenance, cleaning and managing the residents' medical needs.

The City claims IAG is not the owner nor the lessee of 2328 S. Noble or any of the group homes the organization operates. The Plaintiffs dispute this assertion in part because IAG is a party to the lease of 2328 S. Noble.

Plaintiff Mary B. Valencia was the guardian of A.D., a former resident of 2328 S. Noble, who lived at the home from March 2014 until his death in September 2017. After A.D.'s death, Valencia became the Independent Administrator of A.D.'s estate. Plaintiff B.A. moved into the home on November 2, 2017.

The residents of 2328 S. Noble are the lessees of those premises. IAG is also listed as a lessee on the lease.

Residents in group homes serviced by IAG, including the Noble home, select the homes in which they live. As of February 2, 2019, the date of Charlene Bennett's deposition, IAG operated 6 group homes in Springfield.

On February 22, 2018, IAG filed its 2016 tax return for the fiscal year ending June 30, 2016. On that return, IAG stated it did not become aware of any "significant diversion of the organization's assets." The City alleges IAG's claim for damages for diversion of resources is based upon estimates of time spent by officials on matters relating to this litigation and for relocating residents of a former group home in Springfield. The Plaintiffs allege the claim also includes meeting with staff, residents and family members to try to "calm people down" and talk everyone through the discrimination they were experiencing at the Pinehurst[2] and Noble homes.

The amounts claimed are 10% of the CEO's salary (Dr. Bennett), 3% of the COO's salary (Dr. David Brooks) and 5% of the regional director's salary (Beth Jones). No time records were kept quantifying or verifying these estimates.

Citing Dr. Bennett's testimony, the City claims IAG alleges it decided not to open additional homes in Springfield because of the "level of meanness" and "gossip" from neighbors and "elected officials" and because she is "generally very confused" about the requirements and rules in Springfield. Also relying on Dr.

---

[2] IAG also operated a group home on Pinehurst Street that has since closed.

Bennett's testimony, the Plaintiffs dispute the City's assertion and state that IAG did not open additional homes in Springfield because the discriminatory zoning ordinance is still in effect. Dr. Bennett cannot expand the area while the "confusing" law is still the law in Springfield. She does not want to subject future potential residents to what occurred at both Pinehurst St. and at 2328 South Noble.

The City claims most of the negative reaction from neighbors and others happened at the group home on Pinehurst St., not at 2328 Noble. The Plaintiffs dispute this assertion. The cited deposition testimony says the negative reaction from the neighbors occurred immediately at Pinehurst, but at Noble, the harassment did not start until the City posted the sign at the property announcing the zoning commission meeting. Dr. Bennett testified that she did not know if these negative comments have continued in Springfield.

IAG's claim for damages for lost profits or lost economic opportunities is based upon an "estimate [that] it would have opened at least 4 homes serving 16 additional residents." The City claims this "estimate" of the number of homes and residents is based upon internal discussions among IAG officers about "what we want to do" in Springfield and there is no documented business plan or model for future expansion. The Plaintiffs dispute the allegations, stating Dr. Bennett testified IAG planned to open ten homes in the Springfield region because they needed to balance the region by adding additional revenue to pay for the fixed costs. IAG's

typical model is four individuals per home. The Plaintiffs further claim that while there was no written plan, the organization has an action plan of ten homes with four individuals each.

IAG has opened two homes in Springfield since this litigation began and now operates a total of six. IAG states it had already determined locations for the four additional homes it would have opened but for the illegal enforcement of the City's zoning ordinance. IAG gets a significant number of referrals for individuals looking for CILA arrangements in Springfield. Peoria, which is comparable in size to Springfield, gets a similar number of referrals. IAG has opened seven homes in Peoria in one and a half years.

The City claims IAG has not received any negative feedback from the opening of the two homes in Springfield. The Plaintiffs dispute this allegation in part, stating that the first home initially housed one person. Each home now houses only two people because IAG is concerned that placing an additional two individuals in each home would cause conflict with the zoning board as there is no way of knowing if another CILA is within 600 feet and the discriminatory zoning ordinance is still in effect. Those homes are not breaking even financially.

Dr. Bennett testified IAG has had homes with one, two, three and four individuals. She cautioned it is no longer a home if too many people reside there. Therefore, Dr. Bennett testified that four individuals in the home is ideal from an

economic standpoint, even though it means IAG is only breaking even. IAG has roughly 250 individuals whom it serves living in approximately 80 different homes, averaging approximately 3.225 residents per home.

The Plaintiffs state IAG is beholden to the State of Illinois' payment model, which is based on shared revenue. Regardless of the amount of homes IAG operates in any given region, there are fixed costs. IAG must hire a nurse for the region regardless of how many homes it operates there. The more homes IAG is able to operate in a specific region, the more profit they can make because they can spread the fixed costs across several homes while collecting revenue for each individual they serve. IAG claims it has been unable to grow its business in Springfield because of the existing discriminatory zoning law. Dr. Bennett testified that she knows how much emotional and fiscal capital is required to close a home the City has deemed to be in violation of its zoning code because she experienced it first-hand when the City shut down the Pinehurst home.

Ms. Valencia testified that she did not discuss the zoning proceeding with A.D. and does not believe he knew of the proceedings. After the zoning petition was denied, Ms. Valencia did not take any action to look for a new home for A.D. beyond a telephone call to a state agency.

On June 5, 2018, the City filed its amended answers in which the City admitted its "zoning ordinance applicable to group homes for disabled persons, as

in effect on the filing dates of the complaints, discriminated against the residents of the group home located at 2328 Noble Ave. . . . on the basis of their disability in violation of federal law."  At the time of the Plaintiffs' motion, the City had not amended the facially discriminatory zoning ordinance.  Accordingly, IAG is still bound by the discriminatory zoning ordinance or risks facing zoning actions by the City's zoning ordinance.

## III.    DISCUSSION

<u>Legal standard</u>

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  The Court construes all reasonable inferences in favor of the non-movant.  *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011).  To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture."  *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted).   Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion.  *See Springer v. Durflinger*, 518

F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

## CITY OF SPRINGFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The City directs this motion at IAG on the issue of its standing to sue and whether it suffered any provable injury in fact proximately resulting from the City's application of its zoning ordinance. The City's motion is also directed at Mary B. Valencia, as the former guardian of and the current Independent Administrator of the Estate of A.D., in her representative capacity, and current disabled resident, B.A., who moved into 2328 S. Noble on November 2, 2017, after the events complained in the amended complaint. Specifically, the City's motion concerns whether those Plaintiffs suffered any provable injury in fact proximately resulting from the City's actions.

### IAG's standing

The City first claims that Plaintiff IAG lacks standing to sue because it has not suffered an injury-in-fact. The FHA allows any "aggrieved person" to file a civil action seeking damages for a violation of the statute. 42 U.S.C. §§ 3613(a)(1)(A), 3613(c)(1). An "aggrieved person" includes "any person who claims to have been injured by a discriminatory housing practice." *Id*. § 3602(i)(1).

The United States Supreme Court addressed organizational standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992):

First, the plaintiff must have suffered an "injury in fact"—and invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id*. at 560-61 (internal citations and footnote omitted, alterations in original). The City contends IAG has suffered no damages and therefore has no "injury in fact" as contemplated by the Court in *Lujan*. However, the City notes the Seventh Circuit has held that the mere act of filing a lawsuit under the FHA constitutes a diversion of resources sufficient to establish standing. *See Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990).

Accordingly, the City acknowledges that IAG has standing under current Seventh Circuit law to which this Court is bound. For purposes of a potential appeal, however, the City has not waived its right to raise the standing argument in order to suggest that the Seventh Circuit reconsider its holding in *Bellwood*.

IAG also claims it is not asserting standing on the sole basis that it filed suit in this case. IAG states that in addition to a diversion of resources claim, it also raises other injuries that are caused directly by the illegal zoning ordinance at issue in this case. These include the lost profits caused by IAG's inability to pursue additional housing opportunities, the chilling effect of the City's interpretation of its zoning ordinances as it relates to families and family care residences; as well as the

frustration of IAG's mission of providing integrated housing opportunities for persons with disabilities.

There is at least a factual dispute regarding whether IAG is seeking damages that are directly related to its organization. It is worth noting the City allowed IAG to participate in the various zoning hearings for both the Pinehurst and Noble properties. Although the individuals lease the home, IAG is listed as a party on the lease.

The City alleges that, except for filing the lawsuit, IAG has produced no evidence that resources were diverted in an objective way or their mission was frustrated in any respect. The home at 2328 Noble has been operating without interference of any kind since the CPU was denied. The City claims IAG has not presented any evidence or claim of direct injury resulting from the City's actions.

The Plaintiffs claim that IAG expended substantial time and resources applying for the CPU and participating in the zoning process, which included retaining an expert witness and legal counsel. IAG states that it also expended time and resources meeting with staff and family member in order to address issues arising from the process. IAG has expended significant time and resources related to this lawsuit. The Plaintiffs claim that, absent the City's actions, IAG's resources would have been devoted to IAG's core mission of supporting individuals with disabilities in the community.

The City notes that IAG has claimed the following amounts: 10% of the CEO's salary (Dr. Bennett), 3% of the COO's salary (Dr. David Brooks), and 5% of the regional director's salary (Beth Jones), amounting to $46,900.00 over a two-year period after the CPU was denied and continuing at $1,954.17 per month indefinitely. IAG did not produce time sheets or work records in support of these assertions. The City contends these are estimates of time allegedly diverted and unsupported by any documentation of actual time spent. The City relies on *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992), wherein the Seventh Circuit held the magistrate judge committed error where it appeared he merely doubled the compensatory damage award in awarding frustration of purposes damages, without providing any other basis for the award. *See id*. at 1099.

As the Plaintiffs note, however, there do not appear to be any cases that hold an organization is required to produce time records in order to recover diversion of resources damages under the FHA. In *United States v. Balistrieri*, 981 F.2d 916 (7th Cir. 1992), a fair housing organization was awarded damages based on the organization director's testimony about the staff time spent on their efforts and the cost of those efforts—not based on time records. *See id*. at 933. IAG states that Dr. Bennett and other IAG staff members can provide similar testimony about the time and resources it diverted to legal efforts and the turmoil caused within the organization because of the City's actions. Those individuals can provide reasonable

estimates based on first-hand testimony and evidence in the record, leaving any potential amount to be determined by the jury.

Lost profits

The City alleges IAG's claim of lost profits is barred as speculative. In *TAS Distributing v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007), the Seventh Circuit observed that damages for lost profits are "inherently uncertain and incapable of calculation with mathematical precision." *Id*. at 632-33. Thus, "the evidence presented must afford a reasonable basis for the computation of damages." *Id*. at 633.

The City alleges that IAG's speculation as to the future of its business in Springfield is not supported by the income statements from existing group homes. Moreover, two new group homes opened in Springfield since the beginning of this litigation have had negative net revenue. Accordingly, the City contends that IAG's projections for lost revenue do not approach even a minimally reasonable degree of certainty, particularly in their first two years of operation.

If a plaintiff presents evidence it has suffered the sort of injury that would be the expected consequence of a defendant's wrongful conduct, it has done enough to withstand summary judgment on the ground of absence of causation. *See BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 758 (7th Cir. 2011). IAG claims it has presented evidence in support of its claim that its business was directly affected

by the City's illegal actions. Before this lawsuit, IAG says it intended to open around ten homes. It makes sense economically for the City to open more homes that house four individuals each because IAG is subject to the State of Illinois' payment model, which is based on shared revenue. The more homes IAG is able to operate in a particular region, the more profit they are able to generate because they can spread fixed costs—such as a nurse for the region—across several homes while collecting revenue.

Dr. Bennett testified IAG has not been able to grow its business in Springfield because of the existing, discriminatory zoning law. The Plaintiffs allege it is understandable she would not want to risk growing IAG to scale while the discriminatory zoning law that was invoked to close Pinehurst and to attempt to close 2328 S. Noble remains in effect. IAG states that the reason neither of the new homes house more than two people is because IAG does not want to risk further zoning proceedings. IAG further claims it is still unable to provide support to the countless individuals who wish to live in Springfield who have been referred to IAG since the beginning of this litigation.

Upon construing all reasonable inferences in favor of non-movant IAG, the Court concludes there is a genuine issue of material fact regarding whether IAG is entitled to lost profits. The City may be correct that IAG cannot meet its projections for lost revenue. However, the evidence offered by IAG about its plans and business

model as well as the testimony about the effects of the zoning ordinance is sufficient to create a factual dispute regarding the issue of lost profits. Accordingly, the Court will deny the motion on this issue.

Other arguments

The City next claims that it did not prevent IAG from opening new group homes. In fact, IAG did open two new group homes.

The City alleges that its denial of a CPU to the Noble home because it was within 600 feet of another group home had no bearing or impact on IAG's other existing homes or any it might have opened.

Upon drawing all reasonable inferences in favor of the non-movant, the Court finds there is a genuine issue of material fact based on Dr. Bennett's testimony regarding IAG's decision not to open additional homes in Springfield. Dr. Bennett testified more groups were not opened because the discriminatory zoning is still in effect and she did not want to subject potential residents to what occurred on Pinehurst Street and at 2328 Noble. Additionally, Dr. Bennett testified that each of the new group homes houses only two people because of IAG's concern that placing an additional two individuals in the home could run afoul of the zoning ordinance if another CILA is within 600 feet of the group home.

Based on the foregoing, a jury could determine that IAG would have opened additional group homes and/or placed more individuals in existing group homes but for the discriminatory zoning ordinance.

The City also contends that the individual Plaintiffs have not proved any damages. In its previous Order on the City's motion for summary judgment, the Court determined there was a genuine issue of material fact on this issue as to some of the Plaintiffs.

B.A. moved into the house after this lawsuit commenced and after any action of the City regarding the home's zoning. The City contends he cannot claim any damages resulting from the City's actions. While that is certainly a relevant consideration, the Court is unable to conclude that summary judgment is warranted when there has been no final resolution and the discriminatory ordinance continues to exist.

Accordingly, the Court will deny the City's motion for summary judgment.

## PLAINTIFFS' SUMMARY JUDGMENT MOTION AS TO LIABILITY

Plaintiffs IAG, Mary B. Valencia, as the Independent Administrator of the Estate of A.D., and B.A. move for partial summary judgment as to the liability of the City of Springfield.

In support of the motion, the Plaintiffs note that Congress has enacted various acts with the purpose of eradicating discrimination against individuals with

disabilities in the United States. These laws include the FHA, 42 U.S.C. §§ 3601 *et seq.*, and its implementing regulations; Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations. Section 504 of the Rehabilitation Act broadly prohibits discrimination against individuals with disabilities in all federally funded programs or activities, such as the federally assisted housing programs at issue in this case. *See* 29 U.S.C. § 794. The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . a person residing in or intending to reside in that dwelling. . . ." 42 U.S.C. § 3604(f)(1)(B). The Act also prohibits discrimination against such individuals in the "terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." *Id*. § 3604(f)(2). "Congress explicitly intended for the [Fair Housing Amendments Act] to apply to zoning ordinances and other laws that would restrict the placement of group homes" for persons with disabilities. *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 782 (7th Cir. 2002) (citations omitted). Due to the similarities between the statutes regarding protections for individuals with disabilities related to housing, courts have interpreted and applied the anti-discrimination provisions in each of the statutes in

the same way, with only minor differences.  *See e.g.*, *Oconomowoc*, 300 F.3d at 782-83; *Hovsons, Inc. v. Township of Brick*, 89 F.3d 1096, 1101 (3d Cir. 1996).

The Plaintiffs note the City "admitted liability" while claiming that it did not act with any "specific intent to discriminate."  They state this is problematic because the Plaintiffs' claim that the City violated the FHA, the ADA and Section 504 because it maintained and enforced a facially discriminatory zoning code and refused to grant Plaintiffs a CPU or a reasonable accommodation that would have allowed them to remain in their home.  A disparate treatment claim such as these inherently involves an intent to discriminate.  *Hayden ex rel. A.H. v. Greenburg Community School Corp.*, 743 F.3d 569, 579 (7th Cir. 2014) (citing *UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991) ("the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect").

The City claims that although it has admitted that its zoning ordinance violated the FHA, ADA and Rehabilitation Act, the Plaintiffs have not established standing as "aggrieved persons" under 42 U.S.C. § 3613.  The FHA provides that in a case brought by private individuals under § 3613, a court "may award . . . actual and punitive damages" to aggrieved persons.  42 U.S.C. § 3613.  The FHA defines an "aggrieved person" to include any person who "claims to have been injured by a discriminatory housing practice" or who believes he "will be injured by a

discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A "discriminatory housing practice" is "an act that is unlawful under section 3604, 3605, 3606, or 3617" of the FHA. 42 U.S.C. § 3602(f). The Plaintiffs note that sections 3604, 3605 and 3606 address discrimination in the sale or rental of housing, residential real-estate related transactions and provision of brokerage services, respectively, and section 3617 prohibits interference, coercion or intimidation respecting any right granted by those sections. *See* 42 U.S.C. §§ 3604, 3605, 3606 & 3617.

The Plaintiffs contend they have alleged sufficient facts to establish they are "aggrieved persons" under the FHA based on: (1) the City's determination the residents of 2328 S. Noble could not continue to live in their home because they are disabled; and (2) the City's determination IAG could no longer serve the residents of 2328 S. Noble because the individuals "residing in or intending to reside in" the home have disabilities.

As the Plaintiffs allege, the fact that the City did not seek to prevent the Noble home from operating while this action is pending does not cure the harm that resulted. Courts have determined that "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 999 (7th Cir. 2002) (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). "[A]

defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 290 (1982)).

In asserting they constitute "aggrieved parties," the Plaintiffs claim the only reason the residents were not evicted from the Noble home is because the Court entered a preliminary injunction. Without the injunction, the individual Plaintiffs could not live in their chosen home in their community and IAG could not pursue its mission to provide integrated housing for persons with disabilities in the City. However, the protection granted by the preliminary injunction is not a permanent relief. *See Valencia v. City of Springfield*, 883 F.3d 959, 967 n.8 (7th Cir. 2018) ("The City's fear that the district court's preliminary interpretation 'renders moot any factual determination that might be made' at trial is overstated. . . . The propriety of preliminary relief and resolution of the merits are 'significantly different' issues" . . . and thus "findings made at the preliminary injunction stage do not bind the district court as the case progresses.") (internal citations omitted).

Because the ordinance has yet to be amended by the City, the Court concludes that Plaintiffs are "aggrieved persons" as defined by the FHA. IAG is an aggrieved party because the discriminatory ordinance interfered with its ability to operate the group home and, further, it is still bound by the ordinance and thus risks facing

zoning actions. Accordingly, IAG's ability to open additional homes and accrue more revenue is affected by the continued existence of the ordinance.

Additionally, the Court concludes that the individual Plaintiffs qualify as an "aggrieved person" under the FHA. A.D. was a resident of 2328 S. Noble during the zoning proceedings and at the time the action was filed until he passed away on or about September 12, 2017. B.A. has lived in the Noble home since about November 2, 2017 and has been a party in this case since December 12, 2017. A.D.'s estate has also been a party since December 12, 2017. The Court concludes that because the individual Plaintiffs are parties who were injured by the City's admittedly discriminatory housing practices, they qualify as "aggrieved persons" under the FHA. This is true of A.D. even though he only has been a part of this case since after the entry of the preliminary injunction, which enjoined the City from instituting any eviction proceedings against the Plaintiffs while this action is pending. As noted earlier, there remained uncertainty because preliminary injunctive relief did not preclude the City from seeking further relief and the ordinance has remained.

Ergo, the Motion of Defendant City of Springfield for Partial Summary Judgment on the issues of standing and damages [d/e 89] is DENIED.

The Motion of Plaintiffs Individual Advocacy Group, Mary B. Valencia, as the Independent Administrator of the Estate of A.D., and B.A. for Partial Summary Judgment as to the liability of Defendant City of Springfield [d/e 92] is GRANTED.

The Motion of Defendant City of Springfield to Strike Plaintiffs' Summary Judgment Motion [d/e 97] is DENIED.

ENTER: March 16, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge