UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MARY B. VALENCIA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-03331-SLD-JEH |
| | ) | |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-03278-RM-TSH |
| | ) | |
| CITY OF SPRINGFIELD, ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

Before the Court is Plaintiffs Mary B. Valencia, B.A., and Individual Advocacy Group, Inc.'s ("IAG") (collectively "Private Plaintiffs") Motion for Reasonable Attorneys' Fees and Litigation Expenses, ECF No. 202. For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

The instant motion is the coda to a long-running case primarily arising under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631, and Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, concerning the City of Springfield's ("City") treatment of a group home for persons with disabilities within the City at 2328 Noble Avenue ("Noble"). The factual and procedural background of this case—which consolidated suits brought by Private Plaintiffs

1

and the United States of America ("USA") (collectively "Plaintiffs")—has been described in the Court's previous orders and will not be extensively recounted here.[1]  Broadly, the Court found that the City's spacing rule requiring group homes to be 600 feet apart—in conjunction with the City's definition of family—operated to discriminate on the basis of disability as the City allowed up to five unrelated, able-bodied people to live together but prohibited that arrangement if those people were disabled.  *See, e.g.*, *Valencia v. City of Springfield* (*Valencia II*), 446 F. Supp. 3d 369, 381 (C.D. Ill. 2020) ("The 600-foot spacing rule on group homes for individuals with disabilities that does not apply on comparable housing for non-disabled individuals plainly imposes discriminatory 'terms' and 'conditions' on housing on the basis of disability, in violation of 42 U.S.C. § 3604(f)(2).").  Plaintiffs obtained a preliminary injunction which was affirmed upon appeal, a permanent injunction, a jury verdict awarding compensatory damages, a civil penalty against the City, and prejudgment interest, *see supra* n.1, and now Private Plaintiffs seek the final piece of the remedial puzzle—their attorneys' fees, expenses, and costs.

Throughout this case, Private Plaintiffs were represented by attorneys from Kennedy Hunt, P.C., a St. Louis-based firm focusing on civil rights litigation.  *See* Kennedy Decl. ¶ 2, Mem. Supp. Mot. Att'y Fees Ex. A, ECF No. 203-1 ("I have concentrated my practice in special education, disability rights, and civil rights law.").  Attorney Thomas E. Kennedy, III filed

---

[1] *See generally A.D. ex rel. Valencia v. City of Springfield*, No. 16-3331, 2017 WL 3288110 (C.D. Ill. Aug. 2, 2017), *aff'd sub nom. Valencia v. City of Springfield* (*Valencia I*), 883 F.3d 959 (7th Cir. 2018) (affirming the Court's grant of a preliminary injunction which prohibited the City from evicting the Noble residents); *Valencia v. City of Springfield* (*Valencia II*), 446 F. Supp. 3d 369 (C.D. Ill. 2020) (granting summary judgment in favor of the USA and against the City on issues of liability as well as the availability of a civil penalty and compensatory damages for emotional harms); *Valencia v. City of Springfield* (*Valencia III*), No. 16-3331, 2020 WL 1265421 (C.D. Ill. Mar. 16, 2020) (granting summary judgment in favor of Private Plaintiffs and against the City on liability and standing); Verdict Form ¶¶ 1–14, ECF No. 184 (awarding $162,000 in compensatory damages for emotional harms suffered by the Noble residents and their guardians, $83,000 to IAG for diverted resources, and $48,000 to IAG for loss of revenue); *Valencia v. City of Springfield* (*Valencia IV*), No. 3:16-cv-03331-SLD-JEH, 2023 WL 8827687 (C.D. Ill. Dec. 5, 2023) (awarding IAG $53,654.50 in prejudgment interest, imposing a civil penalty of $61,982.50 against the City, and entering equitable relief, which, amongst other things, prohibited the City from evicting the Noble residents and enforcing the discriminatory spacing rule); Inj. 1–4, ECF No. 199; Judgment 1–2, ECF No. 201.

Private Plaintiffs' complaint and attorney Sarah Jane Hunt entered her appearance in this case. Compl. 24, ECF No. 1; Entry Appearance, ECF No. 3.  Private Plaintiffs also seek fees for the work of two other Kennedy Hunt, P.C., attorneys—Ellen Bruntrager and Maggi Carfield.  *E.g.*, Mem. Supp. Mot. Att'y Fees 4, ECF No. 203.

Private Plaintiffs seek $386,557.50 in fees and $33,072.19 in costs, for a total award of $419,629.69.  Mot. Att'y Fees ¶¶ 6–8; *see also* Mem. Supp. Mot. Att'y Fees 1.  The City partially opposes the motion.  Resp. Mot. Att'y Fees 2–5, ECF No. 205.

## DISCUSSION

### I.   Legal Standard

In civil actions under the FHA, the court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs."  42 U.S.C. § 3613(c)(2).  "[A] 'prevailing party' for the purpose of discretionary fee-shifting statutes is one who secures a 'judicially sanctioned change in the legal relationship of the parties.'"  *Fast v. Cash Depot, Ltd.*, 931 F.3d 636, 640 (7th Cir. 2019) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)).  "The City concedes that [Private] Plaintiffs were prevailing parties and [are] entitled to attorneys' fees . . . ."  *See* Resp. Mot. Att'y Fees 4–5.[2]

The principal factor in determining what constitutes a reasonable attorney's fee is the "lodestar" figure, the result of "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'"  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (alteration in original) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433

---

[2] While the City concedes that Private Plaintiffs were prevailing parties generally, the City argues that Private Plaintiffs were not prevailing parties with respect to punitive damages.  Resp. Mot. Att'y Fees 5.  As will be explained further below, the City relies upon an outdated framework in its attempt to dispute prevailing party status with respect to some issues but not others.  *See infra* Section II.B.2.

3

(1983)). Although the lodestar figure is "presumptively reasonable," it may be adjusted as "[t]he reasonableness of an award of fees is fundamentally determined by 'the degree of the plaintiff's overall success.'" *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

## II. Analysis

### A. Reasonable Hourly Rate

Courts determining a reasonable hourly rate for fee awards under discretionary fee-shifting statutes within the Seventh Circuit apply the following standard:

> A reasonable hourly rate is based on the local market rate for the attorney's services. The best evidence of the market rate is the amount the attorney actually bills for similar work, but if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases. The party seeking a fee award bears the burden of establishing the market rate for the work; if the lawyers fail to carry that burden, the district court can independently determine the appropriate rate.

*Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) (citations omitted). "[I]f an out-of-town attorney has a higher hourly rate than local practitioners, district courts should defer to the out-of-town attorney's rate when calculating the lodestar amount . . . ." *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 744 (7th Cir. 2003). While "self-serving affidavit[s] alone cannot establish the market rate for that attorney's services," such affidavits "are sufficient . . . when submitted 'in conjunction with other evidence of the rates charged by comparable lawyers.'" *Brzowski v. Sigler*, No. 17 C 9339, 2021 WL 4283206, at *4 (N.D. Ill. Sept. 21, 2021) (quoting *Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000)). "The Seventh Circuit has criticized third party affidavits 'that merely opine on [the attorney's] market rate,' preferring instead 'affidavits that actually provide evidence as to what the comparable attorneys charge for similar services.'" *Gibson v. City of Chicago*, 873 F. Supp. 2d 975, 983 (N.D. Ill. 2012)

(alteration in original) (quoting *Pickett,* 664 F.3d at 647).  Aggregations like billing surveys "are appropriately viewed as one factor to be considered in combination with other evidence" relevant to determining the reasonable hourly rate.  *Moore v. Midland Credit Mgmt., Inc.*, No. 3:12-CV-166-TLS, 2012 WL 6217597, at *4–5 (N.D. Ind. Dec. 12, 2012) (collecting cases addressing the efficacy of these aggregations).

Private Plaintiffs seek compensation for the work performed by Kennedy, Hunt, Bruntrager, and Carfield.[3]  *See* Mem. Supp. Mot. Att'y Fees 3.  To support the requested rates, Private Plaintiffs submit: (1) declarations from Kennedy and Hunt attesting to their work histories and results which they obtained in similar cases, Kennedy Decl.; Hunt Decl., Mem. Supp. Mot. Att'y Fees Ex. B, ECF No. 203-2; (2) two affidavits and a declaration from three attorneys—Mary Anne Sedey, Carl R. Draper, and James Lewis—who did not work on this case but have extensive civil rights experience and are familiar with the local market rates for similar cases, Sedey Aff., Mem. Supp. Mot. Att'y Fees Ex. C, ECF No. 203-3; Draper Aff., Mem. Supp. Mot. Att'y Fees Ex. D, ECF No. 203-4; Lewis Decl., Mem. Supp. Mot. Att'y Fees Ex. E, ECF No. 203-5; and (3) a survey of billing rates for partners and associates charged by Missouri-based firms in 2022, Billing Rates Survery, Mem. Supp. Mot. Att'y Fees Ex. F, ECF No. 203-6. The City contests the reasonableness of the rates for Kennedy, Hunt, and Bruntrager.  Resp. Mot. Att'y Fees 2.

Starting with the aspects of the supporting exhibits which apply to all three contested rates, Sedey, Draper, and Lewis all have decades of experience in civil rights litigation in Illinois.  Sedey Aff. ¶¶ 1–2; Draper Aff. ¶¶ 1–2, 4; Lewis Decl. ¶¶ 1–2.  They describe the

---

[3] Private Plaintiffs also seek to establish the reasonableness of $100/hour for the services of Althea Respess, a paralegal.  *See* Mem. Sup. Mot. Att'y Fees 3–4.  However, none of the expended hours or expenses are attributed to Respess.  *See* Hours Log 1–140.  Therefore, the Court does not address this issue.

difficulties faced by civil rights plaintiffs seeking contingent representation, and Draper and Lewis aver that the issues raised by this case are extremely important. Sedey Aff. ¶ 6; Draper Aff. ¶¶ 7–9, 11, 14; Lewis Decl. ¶¶ 5, 7. All three lawyers attest to the reasonableness of the rates requested, hours expended, and quality of result obtained in this case. Sedey Aff. ¶¶ 4, 8; Draper Aff. ¶¶ 10–13; Lewis Decl. ¶ 6. The 2022 billing rates survey examined 216 total rates from court filings in federal courts in Missouri, Kansas City, and the Southern District of Illinois, which most often involved "cases that are subject to a fee-shifting statute, such as in employment and civil-rights cases." Billing Rates Survey 1–2. The survey collected "the attorney's standard or customary rates, rather than the rate the court applied." *Id.* at 2. For St. Louis, the survey found that a partner's customary hourly rate ranged from $185 to $950 with a median rate of $420 and an associate's rate ranged from $132 to $950, with a median rate of $350. *Id.* at 4.

### 1. Kennedy

Turning to specific attorneys' rates, Private Plaintiffs seek a rate of $475/hour for Kennedy. Mem. Supp. Mot. Att'y Fees 3–4. A graduate of the University of Illinois College of Law who has worked in civil rights advocacy since 1972, he founded his own practice in 1994, which focuses on special education, disability rights, and civil rights law in Missouri and Illinois. Kennedy Decl. ¶¶ 1–3. He points to the results he achieved in twelve comparable civil rights cases, often involving an injunction, an award of damages, and confidential attorneys' fee settlements. *Id.* ¶ 3. He does not identify the rates for these fees awards. However, Hunt's declaration cites specified rates for Kennedy's work—ranging from $350/hour to $450/hour—in matters which concluded between 2016 and 2018.[4] Hunt Decl. ¶ 12. Sedey avers that

---

[4] More specifically, the representative civil rights matters are: (1) a case alleging "violations of Missouri Administrative Law, the Medicaid Act, the ADA, and the Rehabilitation Act," wherein a Missouri trial court awarded Kennedy a rate of $350/hour and Hunt a rate of $250/hour in 2018 based on 2013 rates, which was above the normal cap of $75/hour due to particular factors in that case, Hunt Decl. ¶ 12.e.i; (2) a Fair Labor Standards Act

Kennedy's requested rate is "consistent with rates charged by comparable attorneys in St. Louis with similar skills, experience and reputation when serving fee-paying clients," and is "actually below market rate for an attorney of his skill and experience."  Sedey Aff. ¶ 4.  Draper also avers that Kennedy's requested rate is reasonable but notes that he has "been billing clients at $350 per hour for employment or civil rights matters which [he] believe[s] is at or below the prevailing rate for lawyers handling these cases in central Illinois" and that he plans to raise his rate to "$400 per hour beginning in January 2024."  Draper Aff. ¶¶ 12–13.

The City seizes upon Draper's declaration, arguing that an appropriate rate for Kennedy "would be $350, as suggested by their own expert's opinion."  Resp. Mot. Att'y Fees 2.  Yet the City ignores Draper's suggestion that $350/hour may be below the market rate.  Draper Aff. ¶ 13.  Further, the City offers no reason to prefer Draper's assessment over Sedey's assessment—an attorney with experience and rate-familiarity comparable to Draper's—which states that even $475/hour would be too low for someone of Kennedy's skill and experience.  Sedey Aff. ¶ 4.  At best, the City has identified that Private Plaintiff's supporting evidence suggests that some figure between $350/hour and $475/hour would be a reasonable rate, without supplying any persuasive reason to choose the lowest end of that range.

But aside from Kennedy and Hunt's declarations, Sedey's input is Private Plaintiffs' only evidence specifically supporting a rate of $475/hour for Kennedy.  Sedey's assessment "merely opine[s] on [Kennedy's] market rate" and is insufficient to establish that $475/hour is reasonable.

---

("FLSA") case filed in the Southern District of Illinois, wherein a March 2017 settlement set Kennedy's rate at $400/hour and Hunt's rate at $300/hour, *id.* ¶ 12.f; (3) a FLSA case filed in the Central District of Illinois wherein a February 2017 settlement set Kennedy's rate at $450/hour and Hunt's rate at $350/hour, *id.* ¶ 12.g; (4) a special education case filed in the Central District of Illinois wherein an April 2016 settlement set Kennedy's rate at $400/hour and Hunt's rate at $250/hour, *id.* ¶ 12.j; (5) a FLSA case filed in the Eastern District of Missouri wherein a May 2016 settlement set Kennedy's rate at $400/hour and Hunt's rate at $300/hour, *id.* ¶ 12.k; (6) a wage, hours, harassment, and wrongful termination suit filed in the Southern District of Illinois wherein a June 2016 settlement set Kennedy's rate at $450/hour and Hunt's rate at $350/hour, *id.* ¶ 12.l.

*See Gibson*, 873 F. Supp. 2d at 983 (quotation marks omitted).  Kennedy does not identify fee-paying clients that have compensated him at that rate, nor instances of other attorneys of comparable experience charging such a rate in comparable cases.  Private Plaintiffs have not established that $475/hour is the local market rate for Kennedy's services, so the Court will independently determine the appropriate rate.  *See Montanez*, 755 F.3d at 553.[5]  The rates set for Kennedy in comparable cases have ranged from $350/hour to $450/hour, *see supra* n.4, and the billing survey suggests that around the median rate of $420/hour for partners in the St. Louis area would be appropriate, *see* Billing Rates Survey 4.  Considering the survey, rates set for Kennedy in comparable cases, and Kennedy's lengthy experience litigating such cases, the Court finds that $450/hour is a reasonable rate for Kennedy in this case.

### 2. Hunt

Private Plaintiffs seek a rate of $400/hour for Hunt.[6]  Mem. Supp. Mot. Att'y Fees 3–4.  A 2011 graduate of the Saint Louis University School of Law, her practice is focused on Illinois, Missouri, and Iowa, with "[m]atters arising under the [FHA] amount[ing] to approximately 30% of [her] practice," and "employment, civil rights, and special education matters" being the

---

[5] Private Plaintiffs argue that "[w]ithin the Seventh Circuit, fee awards equivalent to hourly rates ranging from $400 to $600 are consistently found to be reasonable," Mem. Supp. Mot. Att'y Fees 3 (quoting *Taylor v. Berryhill*, No. 1:16-cv-03474-MJD-JMS, 2018 WL 4932042, at *2 (S.D. Ind. Oct. 10, 2018)), and that "[t]his Court has recently held that a rate of $600/hour is reasonable for an attorney in Central Illinois with over a decade of experience who specializes in the relevant area of law."  *Id.* at 3–4 (citing *Arnold v. Comm'r of Soc. Sec.*, No. 20-cv-03344, 2022 WL 17986681, at *3 (C.D. Ill. Dec. 29, 2022)).  But both of Private Plaintiffs' cited cases involved the determination of attorneys' fees for time spent before courts in Social Security cases where fees are set with reference to an upper limit imposed upon the award of past-due benefits, as opposed to an uncapped rate.  *See* 42 U.S.C. § 406(b) (capping fee awards at "25 percent of the total of the past-due benefits to which the claimant is entitled by reason of [a judgment favorable to a claimant under this subchapter]").  Private Plaintiffs do not explain why these cases should apply to the distinct context of civil rights fee-shifting statutes which do not use a total past-due-benefits award as the relevant baseline—such as the statute at issue here, 42 U.S.C. § 3613(c)(2)—and the Court finds that those Social Security cases are unpersuasive as to the reasonableness of the rates in this case.
[6] Hunt's declaration states that she is seeking a rate of $405/hour, Hunt Decl. ¶ 15, but the hours log, memorandum in support, and other supporting affidavits and declarations set her rate at $400/hour, *see, e.g.*, Hours Log 20; Mem. Supp. Mot. Att'y Fees 3–4; Kennedy Decl. ¶ 8; Sedey Aff. ¶ 4; Draper Aff. ¶ 12.  The Court therefore analyzes the reasonableness of $400/hour for Hunt.

exclusive focus of her practice since 2012. Hunt Decl. ¶¶ 4, 6–7, 11. She submits citations to fee awards—setting rates for her ranging from $250/hour to $350/hour—in similar matters which concluded between 2016 and 2018. *See supra* n.4. Private Plaintiffs have similarly failed to support the reasonableness of $400/hour for Hunt—for example, they provide no evidence that fee-paying clients have actually paid for her services at that rate—such that the Court must independently determine the reasonable rate for her services. *See Montanez*, 755 F.3d at 553.

$350/hour may have been the appropriate rate for Hunt if this case had concluded by 2018. *See supra* n.4. However, many of Hunt's hours were expended between 2021 and 2023, such as the time that she invested into successfully trying Private Plaintiffs' compensatory damages claim before a jury. Hours Log 110–26. The median rate for a partner in the St. Louis area during this time was approximately $420/hour, such that $350/hour would be an outdated and inadequate rate for an attorney like Hunt. *See* Billing Survey 2. Considering the survey, rates set for Hunt in comparable cases, and Hunt's less lengthy but extensive experience litigating such cases, the Court finds that $400/hour is a reasonable rate for Hunt in this case.

### 3. Bruntrager

Private Plaintiffs seek a rate of $250/hour for Bruntrager. Mem. Supp. Mot. Att'y Fees 4. She "was admitted to the bar in Missouri in 2021 and was previously an appellate judicial law clerk." *Id.* Private Plaintiffs identify a 2018 award from the United States District Court for the Northern District of Illinois of $230/hour for an attorney recently admitted to the bar. *Id.* (citing *Baker v. Ghidotti*, No. 11 C 4197, 2018 WL 1610263, at *2 (N.D. Ill. Apr. 3, 2018)). Private Plaintiffs argue that the 2018 award and Bruntrager's experience as an appellate judicial law clerk justifies the slightly higher rate of $250/hour. *Id.* The City does not offer a contrary citation but argues that $250/hour "is rather high for an attorney of such limited experience" and

asserts that $200/hour would be appropriate for Bruntrager.  Resp. Mot. Att'y Fees 2.  Private Plaintiffs do not provide nearly the same level of detail for Bruntrager's experience and qualifications as they did for Kennedy and Hunt.  They also do not show that fee-paying clients would pay a premium for Bruntrager's experience as an appellate judicial law clerk, nor that such a practice is common in the relevant market.  Moreover, the rate awarded for a Chicago-based attorney in a case before a federal court in Chicago does not establish the reasonable rate of a St. Louis-based attorney practicing in central Illinois.  Therefore, the Court must independently determine a reasonable rate.  *See Montanez*, 755 F.3d at 553.  Last year, this Court found reasonable a rate of $200/hour for recent law-school graduates in civil rights cases.  *See Rodesky v. Pfister*, No. 15-cv-1002-JEH, 2023 WL 2585856, at *4, 6 (C.D. Ill. Feb. 21, 2023) (Hawley, M.J.), *appeal dismissed sub nom. Rodesky v. Jeffreys*, Nos. 23-1403 & 23-1509, 2023 WL 5608424 (7th Cir. Apr. 19, 2023).  The Court finds that $200/hour is a reasonable rate for Bruntrager as well.

#### 4.  Carfield

Private Plaintiffs seek $350/hour for Carfield.  Mem. Supp. Mot. Att'y Fees 4.  Carfield "has been practicing law for over 15 years," and was previously a judicial law clerk and *pro se* staff attorney in the Southern District of Illinois.  *Id.*  The City does not oppose this rate.  *See* Resp. Mot. Att'y Fees 2.  As with Bruntrager, Private Plaintiffs do not offer any detailed work history or comparable rates, such that the Court must independently determine a reasonable rate.  *See Montanez*, 755 F.3d at 553.  The Court found that a rate of $400/hour was appropriate for Hunt, who has been a practicing attorney for slightly less time than Carfield, such that the Court finds that Private Plaintiffs' unopposed requested rate of $350/hour for Carfield is reasonable.

In sum, the Court finds the following rates to be reasonable: $450/hour for Kennedy; $400/hour for Hunt; $350/hour for Carfield; and $200/hour for Bruntrager.

## B. Hours Reasonably Expended

The other portion of the lodestar calculation requires the Court to determine whether the hours were reasonably expended by Private Plaintiffs' attorneys in this matter. *See, e.g.*, *Hensley*, 461 U.S. at 434 (1983). Private Plaintiffs' attorneys billed 942.8 hours. *See* Hours Log 1–126, Mem. Supp. Mot. Att'y Fees Ex. G, ECF No. 203-7. "A district court may strike billing entries so long as the party requesting fees has an opportunity to respond to any objections." *Montanez*, 755 F.3d at 555. The challenger to a fee petition "must detail [its] objections . . . such that the court can determine what portion of the fees, if any, were not reasonably expended." *RK Co. v. See*, 622 F.3d 846, 854 (7th Cir. 2010). The City objects to two categories of entries: (1) time spent representing Private Plaintiffs in zoning matters, Resp. Mot. Att'y Fees 2–3; and (2) time spent on discovery after the City's unsuccessful appeal of the Court's preliminary injunction, *id.* at 3–5. The City specifies a range of dates which it argues have entries under either category, highlighting those entries in Private Plaintiffs' hour log. *See id.* at 2–5; Highlighted Hours Log 1–15, 20–21, 45,[7] 80–90, 92–93, Resp. Mot. Att'y Fees Ex. A, ECF No. 205-1.

### 1. Zoning Matters

Private Plaintiffs seek compensation for hours expended representing them before the City's Planning and Zoning Commission and City Council while they were seeking a

---

[7] The City highlights two entries on July 14, 2017 from Hunt for time spent driving to and from Springfield to attend the preliminary injunction hearing. Highlighted Hours Log 45. The City does not state why these entries should be excluded. *See* Resp. Mot. Att'y Fees 3, 5. The Court does not consider this undeveloped objection, *see RK Co.*, 622 F.3d at 854, and notes that travel time is presumptively compensable, *see, e.g.*, *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984).

Conditional Permitted Use ("CPU") permit and while the City was considering amendments to the spacing rule.  *See* Highlighted Hours Log 1–15, 20–21, 84–85.  For example, Kennedy appeared at two municipal hearings to pursue the CPU permit which would have given the Noble residents relief from the spacing rule.  *See* Nov. 16, 2016 Springfield Planning and Zoning Commission Meeting Mins. 2, USA Mot. Partial Summ. J. Liability Ex. 18, ECF No. 91-18; Dec. 20, 2016 Springfield City Council Meeting Mins. 7:7–15, USA Mot. Partial Summ. J. Liability Ex. 7, ECF No. 91-7.  Similarly, Hunt attended a Planning and Zoning Commission meeting on September 19, 2018.  Hours Log 85.

Depending on the cause of action, time spent in non-federal administrative and judicial proceedings can be compensable as attorneys' fees.  *See, e.g.*, *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 66 (1980) (holding that fees "for legal work done in state and local proceedings" were available under Title VII, 42 U.S.C. § 2000e-5(k)).  Generally, fees are not available for non-federal proceedings which are unnecessary for bringing the federal action.  *See Webb v. Bd. Of Educ.*, 471 U.S. 234, 240–41 (1985) (distinguishing *Carey* because "[a]dministrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce [42 U.S.C.] § 1983").  However, the portion of work "that was both useful and of a type ordinarily necessary to advance the civil rights litigation" may be properly compensable.  *See id.* at 243; *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560–61 (1986) (concluding that the fact that time spent monitoring consent-decree compliance and in hearings before the Environmental Protection Agency "did not occur in the context of traditional judicial litigation d[id] not preclude an award of reasonable attorney's fees . . . for the work done during these portions of the present action" (citing *Webb*, 471 U.S. at 233–34)).  The City argues that hours expended on zoning matters "should be excluded from recovery

as not a part of or necessary for these proceedings," and seeks to exclude 44.8 hours expended by

Kennedy and 9.5 hours expended by Hunt.  *See* Resp. Mot. Att'y Fees 2–3.[8]

The result urged by the City is not warranted because Private Plaintiff brought causes of

action under the FHA and ADA and hours expended pursuing the CPU permit were necessary to

enable those causes of action.  This principle is illustrated by the Second Circuit's decision in

*Tsombanidis v. West Haven Fire Department*, 352 F.3d 565, 581 (2d Cir. 2003).  There, the

district court had previously found that some of the plaintiffs' claims "were not ripe because

[they] had not yet utilized the appropriate administrative proceedings to obtain an

accommodation."  *Id.* at 572.  The plaintiffs subsequently utilized those administrative

proceedings and the district court awarded fees for those hours.  *Id.* at 572, 581.  Upon review,

the Second Circuit noted that "[t]o prevail on a reasonable accommodation claim, plaintiffs must

first provide the governmental entity an opportunity to accommodate them through the entity's

established procedures used to adjust the neutral policy in question."  *Id.* at 578–79 (first citing

*Oxford House-C v. City of St. Louis*, 77 F.3d 249, 253 (8th Cir.1996); and then citing *United

States v. Village of Palatine*, 37 F.3d 1230, 1234 (7th Cir.1994)).  Noting that "an administrative

proceeding could be included in the calculation of reasonable attorney's fees if it is 'useful and

of a type ordinarily necessary to secure the final result obtained from the litigation,'" *id.* (quoting

*Delaware Valley*, 478 U.S. at 561), the Second Circuit found that the plaintiffs "used the

appropriate channels to seek a variance in the zoning regulations and to cure their ripeness

---

[8] The City also cites a case wherein fees were not awarded pursuant to 42 U.S.C. § 1988 for certain time spent before a zoning board.  *See* Resp. Mot. Att'y Fees 3 (citing *World Outreach Conf. Ctr. v. City of Chicago*, 234 F. Supp. 3d 904 (N.D. Ill. 2017), *aff'd*, 896 F.3d 779 (7th Cir. 2018)).  *World Outreach* does not stand for the categorical proposition that time spent before zoning boards is non-compensable.  There, the court excluded some "time preparing or appearing before the [defendant]'s zoning department and working on identifiable inspection, plumbing, gas, or tax issues" as "not done in pursuit of the claims that [the plaintiff] raised in this lawsuit."  *World Outreach*, 234 F. Supp. 3d at 916.  But "[o]ther work in this period related to the [single-room occupancy] license and was so intertwined with this litigation . . . that it cannot be fairly separated for the purpose of the lodestar analysis."  *Id.*  The Court must determine whether the disputed entries were similarly "intertwined" with this case.

problem," that the zoning proceedings were of "the type ordinarily necessary to secure the final

result in an FHA[] enforcement action brought under a reasonable accommodation theory," and,

accordingly, that the plaintiffs' attorneys were properly compensated for their time spent before

the zoning board. *Id.* at 581.

Here, the City's code directed Private Plaintiffs to seek a CPU permit if they wanted

relief from the spacing rule. *See* Springfield, Ill., Code of Ordinances § 155.053 (imposing the

spacing rule); *id.* § 155.211.1 (providing that group homes "not in compliance with section

155.053" may be eligible for a CPU permit). Private Plaintiffs' request for a preliminary

injunction was partially premised upon a failure to accommodate theory. *See, e.g.*, *Valencia I*,

883 F.3d at 965. They would have faced ripeness issues if they had not followed the "proper

local procedures to request a reasonable accommodation" before filing suit under the FHA and

ADA. *See Tsombanidis*, 352 F.3d at 581. The Court finds that time spent on the CPU permit

was of "the type ordinarily necessary to secure the final result" achieved here, *see id.*, and is

compensable, *see Delaware Valley*, 478 U.S. at 561; *Webb*, 471 U.S. at 240–41.

As to Hunt's attendance at the September 19, 2018 Planning and Zoning Commission

meeting, tracking the legislative debate concerning the City's proposal to change the spacing rule

was also work of the type ordinarily necessary to secure the final result in this case. The spacing

rule and its discriminatory impacts were the impetus for these cases and the City was not ordered

to file a plan to remediate its FHA violations—which would include addressing the spacing

rule—until March 3, 2020, many months after that September 19, 2018 meeting. *See Valencia*

*II*, 446 F. Supp. 3d at 379, 385. Keeping abreast of the City's ultimately unrealized plans to

amend the spacing rule was necessary to support Private Plaintiffs' argument that the spacing

rule was not amended and still applied to them, thereby supporting IAG's standing to seek

14

compensatory damages. *See Valencia v. City of Springfield* (*Valencia III*), No. 16-3331, 2020 WL 1265421, at *9 (C.D. Ill. Mar. 16, 2020). This sort of fact investigation is compensable in this case. *Cf. Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1026 (N.D. Ill. 2009) (noting that a court has discretion to decide whether "an attorney is entitled to recover for her active participation in a state proceeding that is factually related to a federal civil rights action" (citing *Delaware Valley*, 478 U.S. at 561)), *amended sub nom. Dupuy v. McEwan*, No. 97 C 4199, 2009 WL 10740693 (N.D. Ill. Dec. 21, 2009). The Court finds that the hours expended monitoring how the City planned to amend the spacing rule were reasonably expended.

In sum, the Court does not exclude the time expended in pursuit of the CPU permit and monitoring amendments to the spacing rule—44.8 hours for Kennedy and 9.5 hours for Hunt. *See* Resp. Mot. Att'y Fees 2–3; Highlighted Hours Log 1–15, 20–21, 84–85.

### 2. Discovery After City Amended its Answer

The City argues that 3.3 hours of Kennedy's time and 106 hours of Hunt's time should be excluded, describing those entries as "directed to [Private] Plaintiffs' unsuccessful effort to establish punitive damages liability." *See* Resp. Mot. Att'y Fees 3–5; Highlighted Hours Log 80–90, 92–93. For context, months after Private Plaintiffs successfully defended against the City's appeal of the Court's preliminary injunction and the stay on discovery had been lifted, *see Valencia I*, 883 F.3d at 971; Mar. 27, 2018 Text Order (Mills, J.), Private Plaintiffs filed a motion to compel, alleging that the City had "wholly failed to respond in writing to [Private] Plaintiffs' discovery requests," in reliance upon its plan to amend the spacing rule, Mot. Compel ¶¶ 5–6, ECF No. 50. The City responded to the motion to compel by: (1) seeking to amend its answer to admit that the spacing rule violated federal law but still deny any specific intent to discriminate, *see* Mot. Am. Answers Consistent Appellate Order ¶ 5, ECF No. 53; and (2)

seeking a protective order, asserting that whether the City's spacing rule violated federal law was "no longer contested," and that further discovery was wasteful and unnecessary, Mot. Protective Order ¶¶ 2–4, ECF No. 55.  Private Plaintiffs resisted the protective order, arguing they still needed discovery relevant to issues of damages, equitable relief, attorneys' fees and costs, and punitive damages.  Objs. Def.'s Mot. Protective Order ¶¶ 4–10, ECF No. 59.  As to punitive damages specifically, Private Plaintiffs cited the City's initial disclosures as demonstrating "that the discriminatory wishes of the citizens of [the City] were probably the cause of the City['s] . . . admittedly illegal conduct directed against [Private] Plaintiffs and other group home residents," and posited that if they could "show 'widespread and knowledgeable participation by taxpayers in the municipality's outrageous abuse of constitutional rights,' [Private] Plaintiffs may be entitled to an award of punitive damages."  *Id.* ¶ 10 (quoting *Teran v. Village of Wheeling*, No. 13 C 6509, 2014 WL 2938397, at *10 (N.D. Ill. June 30, 2014)).

The City's position sought to walk a fine line; it argued that amending the answer would mean the "litigation [could] proceed more expeditiously to discovery and litigation relevant to damages incurred by the [Private P]laintiffs and penalties, if any, appropriate to the [USA]," Mot. Am. Answers Consistent Appellate Order ¶ 6, yet the City also wanted to cut off any further discovery as to "whether the City's zoning ordinance violate[d] the Fair Housing Act and other federal statutes on the basis of discrimination against disabled persons," Mot. Protective Order ¶ 2—in other words, discovery as to liability.  The Court granted the City leave to amend its answer as that request was unopposed.  First June 20, 2018 Text Order (Schanzle-Haskins, M.J.).  But the Court denied the requested protective order, noting that it was clear that "factual issues still exist in this case" and that amendments to the spacing rule would not moot Private Plaintiffs' claims for "damages for the alleged intentional discrimination."  June 20, 2018

16

Opinion 3, ECF No. 60 (Schanzle-Haskins, M.J.).  Private Plaintiffs ultimately did not seek punitive damages at trial.  *See, e.g.*, June 13, 2022 Order 4, ECF No. 174 ("[P]unitive damages are not being sought at trial.").

The City's argument to exclude these hours proceeds from a legally outdated premise. The City concedes that Private Plaintiffs are prevailing parties with respect to damages, equitable relief, and attorneys' fees.  Resp. Att'y Fees 4.  However, the City argues that because Private Plaintiffs did not ultimately pursue their punitive damages claim, they are not prevailing parties for purposes of the claim and may not recover fees for hours expended towards that end.  *Id.* at 5. For support, the City quotes from *Lenard v. Argento*, 699 F.2d 874, 899 (7th Cir. 1983), *see id.*, which held that "[t]he amount of attorney's fees they receive [prevailing plaintiff] should be based on the work performed on the issues in which they were successful," *Lenard*, 699 F.2d at 899 (second alteration in original).  However, that portion of *Lenard* was overruled by *Hensley*. "By specifically approving an award of attorney's fees for time spent litigating unsuccessful claims for relief that are *related to* successful claims, *Hensley* implicitly rejects our opinion in *Lenard v. Argento* that 'attorney's fees should be awarded only for the preparation and presentation of claims on which the plaintiff has prevailed.'"  *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 n.14 (7th Cir. 1983) (quoting *Lenard*, 699 F.2d at 899).  The Court could find this argument waived and end its inquiry here.  *See, e.g.*, *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Even if the City's argument was based upon current authority, the City has done nothing to demonstrate that these hours were expended in support of an unsuccessful claim beyond pointing to the fact that they were expended after the City amended its answer.  *See* Resp. Att'y

Fees 5.  The Court previously recognized that the City's admission of liability in its amended

answer did not resolve the contested issues in this case.  *See* June 20, 2018 Opinion 3.  The

City's attempt to exclude these entries is simply a continuation of this previously rejected line of

attack; the City's admission of liability did not mean that the case was over, and that Private

Plaintiffs had no need for discovery.  For example, after amending its answer, the City continued

to deny that it acted with "any specific intent to discriminate" and argued that Private Plaintiffs

failed to "establish[] standing as aggrieved persons under 42 U.S.C. § 3613," which were

necessary showings to prove a violation of the FHA.  *See Valencia III*, 2020 WL 1265421, at *8–

9 (quotation marks omitted).  The City's adoption of a new litigation posture does not dictate that

hours subsequently expended upon discovery were necessarily unreasonably expended.

     Moreover, a closer factual examination of the hours to which the City objects reveals that

these hours were expended in support of Private Plaintiffs' successful claim for compensatory

damages to remedy the City's discrimination.[9]  The City divides the challenged 109.3 hours into

two categories: (1) 87.9 hours expended by Hunt in preparing for the depositions of "City

officials John Harris, Matt McLaughlin, Alderman Theilan, Alderman McMenamen, Alderman

Proctor, and Sr. Assistant Corporation Counsel, Linda O'Bri[e]n"; and (2) 18.1 hours expended

by Hunt and 3.3 hours expended by Kennedy which "were for the express purpose of addressing

allegedly inadequate written discovery responses to liability issues."  Resp. Mot. Att'y Fees 5.

     As to the first category of hours, the aldermen's depositions concerned, amongst other

things, their thought processes in approving or denying the requests for a CPU permit.  *See, e.g.*,

---

[9] Hunt successfully tried Private Plaintiff's claims for compensatory damages before a jury.  *See, e.g.*, July 25, 2022 Min. Entry.  Plaintiffs did not seek a specific amount of compensatory damages for emotional damages, and the Noble residents and their guardians received a total of $162,000 in damages for their emotional distress.  Verdict Form ¶¶ 1–10, ECF No. 184; Jury Trial Tr. Vol II 494:12–17, ECF No. 195.  Private Plaintiffs asked the jury to award IAG $83,000 for diversion of resources and $757,702.02 for loss of revenue—the jury ultimately awarded IAG the full $83,000 for diversion of resources but only $48,000 for loss of revenue.  Verdict Form ¶¶ 11–14; Jury Trial Tr. Vol II 507:1–20.

Proctor Dep. 142–61, Resp. Mot. Sever Trial, ECF No. 95-1; Theilen Dep. Vol. II 250–53, 256, USA Resp. Def.'s Mot. Summ. J. Ex. 50, ECF No. 96-5; McMenamin Dep. 70, USA Resp. Def.'s Mot. Summ. J. Ex. 52, ECF No. 96-7.  Harris's deposition established when the City first became aware of the Noble home as a group home.  Harris Dep. 182, USA Mot. Partial Summ. J. Ex. 38, ECF No. 91-38.  McLaughlin's deposition addressed the City's evolving interpretation of how it defined "family" in its zoning code.  McLaughlin Dep. Vol. II 211–12, USA Mot. Partial Summ. J. Ex. 36, ECF No. 91-36.  O'Brien's deposition covered whether the FHA proscribed enforcing the City's spacing rule against a group of individuals that satisfied that definition of family.  O'Brien Dep. Vol. II 245, 248, USA Mot. Partial Summ. J. Ex. 44, ECF No. 91-44. These topics squarely concerned the City's discriminatory conduct which gave rise to Private Plaintiff's entitlement to compensatory damages.  Moreover, McLaughlin and O'Brien were witnesses for the City at the compensatory-damages trial.  *See, e.g.*, Jury Trial Tr. Vol. II 275:10–14 (designating McLaughlin and O'Brien as witnesses for the defendant).  The Court finds that the hours expended on these depositions furthered Private Plaintiffs' successful compensatory damages claim.

As to the second category of hours—which the City argues were for "the express purpose" of addressing liability issues, *see* Resp. Mot. Att'y Fees 5—these entries include hours expended by Hunt to prepare for the City's Federal Rule of Civil Procedure 30(b)(6) witnesses' depositions, such as Harris, McLaughlin, and O'Brien.  *See* Highlighted Hours Log 82 ("Review and annotate discovery product (HUD impediments to Fair Housing reports) in preparation of 30b6 deposition."); *see also* Harris Dep. 1 (designating the deponent as a Rule 30(b)(6)); McLaughlin Dep. Vol. II 1 (same); O'Brien Dep. Vol. II 195 (same).  As stated above, the hours expended upon these depositions were reasonably expended.  This second category of hours also

19

includes entries like discussing "strategy for setting depositions and compelling discovery" and a "possible need [for] IAG to file motion to compel." Highlighted Hours Log 83. Addressing the City's inadequate discovery responses was not unique to the punitive damages claim. The City's discovery production was routinely "late, rolling, and incomplete." Resp. Mot. Extend Time 2–3, ECF No. 62. Simply affixing the labels of "liability" and "punitive damages" is insufficient to show that these hours were unreasonably expended—the City was still resisting Private Plaintiffs' ability to obtain compensatory damages, and the Court finds that these hours also furthered Private Plaintiffs' successful compensatory damages claim.

In sum, the Court finds that all the entries to which the City objects were reasonably expended in this case, and therefore are compensable.

### C. Costs and Expenses

Private Plaintiffs seek the reimbursement of $33,072.19 in costs and expenses, covering items like filing fees, service of process fees, expert fees, deposition and transcript fees, hotel accommodations, meals, car rentals, and mileage reimbursements. *See* Hours Log 127–39. A prevailing plaintiff may recover its costs under the FHA. 42 U.S.C. § 3613(c)(2). The "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of the Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). "Rule 54(d) creates a presumption that the prevailing party will recover costs, and . . . the ultimate decision to award costs is within the district court's discretion." *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 378–79 (2013) (holding that "that a statute must be contrary to Rule 54(d)(1) in order to displace it" and that a statute is contrary to Rule 54(d)(1) if it limits a court's discretion to award costs). The losing party must show that the costs are not

20

appropriate. *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The City

does not object to any of these costs. The Court finds that the costs were necessarily incurred

and are reasonable.

## CONCLUSION

Accordingly, Plaintiffs Mary B Valencia, B.A., and Individual Advocacy Group, Inc.'s

Motion for Reasonable Attorneys' Fees and Litigation Expenses, ECF No. 202, is GRANTED

IN PART and DENIED IN PART. Attorney Thomas E. Kennedy, III is awarded $96,345,

Attorney Sarah Jane Hunt is awarded $252,200, Attorney Maggi Carfield is awarded $28,385,

and Attorney Ellen Bruntrager is awarded $3,420—a total award of $380,350 in attorneys' fees.

The Clerk is directed to tax costs to the City of Springfield in the amount of $33,072.19.


Entered this 17th day of July, 2024.


s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE